760 P.2d 1182

**Vicki CLARKE, Plaintiff–Appellant,**

**v.**

**Thomas F. PRENGER, M.D., and Jane Doe Prenger, husband and wife; and Rena A. Yonkosky, M.D., and John Doe Yonkosky, husband and wife, Defendants–Respondents.**

**No. 17003.**

Supreme Court of Idaho.

Aug. 25, 1988.

Hannon, Jenkins & Associates, Coeur d'Alene, Hemovich, Nappi & Oreskovich, Spokane, Wash., for plaintiff-appellant. Carl J. Oreskovich argued.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents. Jeremiah A. Quane argued.

SHEPARD, Chief Justice.

This is an appeal from a summary judgment in favor of defendant physicians in a medical malpractice action. The sole issue presented is whether summary judgment was correctly issued on the basis that the affidavits of plaintiff's expert witness were insufficient to demonstrate familiarity with the local standard of care, and whether plaintiff's expert witness, not being board-certified in the same specialties as were the defendants, was not qualified to express an opinion as to the standard of care incumbent upon the defendant physicians. We reverse.

Since the question presented is so narrow, only a truncated version of the facts is necessary. Defendant Prenger is a board-certified family practitioner in Silverton, Idaho, and upon request he inserted an IUD into plaintiff Clarke. Shortly thereafter Clarke and Prenger were unable to locate the IUD, and Clarke became pregnant. Continued examinations failed to locate the IUD. Plaintiff delivered the child and the IUD was not located. Subsequently, Clarke experienced pelvic disease and was referred to defendant Yonkosky, who is a board-certified general surgeon. Thereafter Clarke received considerable treatment, including surgery, and ultimately the IUD was located in her pelvic region. Clarke filed the instant action alleging violation of the applicable standard of care by the defendant physicians.

Following the taking of depositions of Clarke, Prenger, and Yonkosky, the defendants moved for summary judgment. In response thereto plaintiff filed affidavits of a board-certified obstetrician-gynecologist from the state of Washington. Among other matters contained in the affidavits, Dr. Rattray stated:

> I am familiar with the professional standard of care applicable to the physicians Prenger and Yonkosky engaged in the treatment of Vickie Clarke in Shoshone County, Idaho. I have reviewed the medical records and treatment of Mrs. Clarke by doctors Prenger and Yonkosky and am of the opinion that both doctors Prenger and Yonkosky have breached the standard of care applicable to the physicians engaged in the treatment of cases such as Vickie Clarke's in Shoshone County, Idaho.

That affidavit was supplemented by a letter attached thereto which set forth in detail the reasons for Rattray's opinion that Prenger and Yonkosky had breached the applicable standard of care.

As aforesaid, the district judge granted the motion for summary judgment on the basis that Dr. Rattray had not demonstrated familiarity with the standard of care applicable in the circumstances, and that Rattray was not shown to be "in the same specialty of medical practice as either of the two defendant doctors."

We take this occasion to express our disapproval of what appears to be a growing practice among the trial courts of this state dismissing medical malpractice cases at the summary judgment point on the basis that plaintiffs' expert witnesses are not sufficiently familiar with the standard of care to be expected from defendant-physicians. Our rules and our decisional law, *Worthen v. State*, 96 Idaho 175, 525 P.2d 957 (1974); *Tri–State Nat. Bank v. Western Gateway Storage Co.*, 92 Idaho 543, 447 P.2d 409 (1968); I.R.C.P. 56(e), demonstrate that when faced with a motion for summary judgment the party against whom it is sought may not merely rest on allegations contained in his pleadings. Rather, he must come forward and produce evidence by way of deposition or affidavit to contradict the assertions of the moving party and establish a genuine issue of material fact. We do not view such burden as being onerous on plaintiffs in medical malpractice cases since ordinarily it only requires a positive indication that plaintiffs' expert witnesses possess the requisite knowledge of the local standard of care which has been allegedly violated. Unfortunately, plaintiffs' counsel too often are either unaware of the requirements of the summary judgment process, or fail to take their responsibilities seriously. On the other hand, it appears that some of our trial judges fail to recognize their obligation to construe not only the evidence before the court, but all reasonable inferences that flow therefrom, most favorably to the non-moving party. In our view the instant case provides an example of the lack of specific detail by plaintiff's counsel, and the error of the trial court in failing to view the evidence and the inferences flowing therefrom, most favorably toward the non-moving party.

It would serve no purpose to set forth the affidavits of Dr. Rattray and the correspondence attached thereto at length. It is sufficient to say they may be viewed as deficient in that they fail to delineate the process by which the witness obtained his alleged knowledge of the local standard of care then prevailing in Shoshone County. However, if such were a material deficiency, and if indeed no process had been engaged in to determine such standard, the deficiencies could have been established by taking the deposition of the witness. Nevertheless, the affidavits establish by conclusory statements that the witness possessed knowledge of the applicable local standard of care, and the standard of care incumbent upon each defendant in their board-certified specialties. Hence, we hold that the statements contained in the affidavits, together with all the legitimate inferences flowing therefrom, were sufficient to establish the existence of a genuine issue of material fact which precluded the issuance of summary judgment, *i.e.*, did Rattray possess the requisite knowledge of the required standard of care.

We next address what might be considered the alternative holding of the district judge in the instant case, that the witness Rattray was not in the same specialty of medical practice as the defendants, and hence was not competent to testify as to their alleged breach of the requisite standard of care. That question was not specifically addressed in our recent cases of *Buck v. St. Clair*, 108 Idaho 743, 702 P.2d 781 (1985) or *Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987). The question was, however, addressed in our recent case of *Pearson v. Parsons*, 114 Idaho 334, 757 P.2d 197 (1988). We take the present occasion to additionally address the question.

A similar question was presented in *Fitzmaurice v. Flynn*, 167 Conn. 609, 356 A.2d 887 (1975). There it was alleged that medical malpractice of an obstetrician-gynecologist had caused damage to the plaintiff. At trial objection was made and sustained to the testimony of an expert witness for the plaintiff on the basis that the witness was not a board-certified obstetrician-gynecologist, although he had testified in detail as to his knowledge of the standards for obstetricians-gynecologists, and was familiar with their procedures. The witness was a surgeon specializing in breast cancer surgery, and had close ties and knowledge of the specialty practice of obstetrician-gynecologists. Nevertheless, the objections to

his competence were sustained. On appeal the court noted:

> The remaining basis for the court's ruling sustaining the defendant's objections was that Goldenberg was not of the same medical specialty as the defendant.
> . . .
> Recognizing the complexity of knowledge required in the various medical specialties, more than a casual familiarity with the specialty of the defendant's physician is required. The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness's particular specialty if it differs from that of the defendant. It is the scope of the witness's knowledge and not the artificial classification by title that should govern the threshold question of admissibility. Of the decisions in other jurisdictions which have discussed this issue, this appears to be the decided majority view. (citations omitted).

It is obvious from the plaintiff's extensive offer of proof that Goldenberg met more than the minimal requisites of familiarity with the standards of an obstetrician-gynecologist as to the diagnosis and care of breast lumps to qualify him to render an expert opinion. It is precisely such a circumstance that reveals the distinction by title as artificial and formal, ignoring the substantive expertise of the witness.

We agree with the analysis of the Connecticut court. *See also Radman v. Harold,* 279 Md. 167, 367 A.2d 472 (1977) (internal medicine specialist held to have necessary qualifications to express opinion as to the alleged negligence of a gynecologist-surgeon); *Wright v. Schulte,* 441 So.2d 660 (Fla.App.1983) (board-certified pathologist with experience in obstetrics and gynecology held qualified to testify as to the alleged negligence of a surgeon in performing a hysterectory); *Riewe v. Arnesen,* 381 N.W. 2d 448 (Minn.App.1986), *review denied* (non-surgeon internist held qualified to testify as to the alleged negligence of a surgeon). *Cf. Connolly v. Kortz,* 689 P.2d 728 (Colo.Ct.App.1984) (internal medicine specialist held unable to testify as to the alleged negligence of a surgeon because he was not in the same specialty and denied having any expertise in surgery or having studied the standards of practice of surgeons).

We call attention to the fact that each of the above-cited cases did not involve summary judgment, but rather involved testimony of witnesses at trial where there could be, and was, a full development of their expertise and knowledge of the specialty of the defendant physicians.

The summary judgment and orders issued by the district court are reversed and the cause is remanded for further proceedings. Costs to appellant.

BISTLINE, HUNTLEY and JOHNSON, JJ., concur.

BAKES, Justice, dissenting:

This case is very similar to *Pearson v. Parsons,* 114 Idaho 334, 757 P.2d 197 (1988). Reference is made to my concurring opinion therein for an in-depth discussion of the applicable law. At this juncture, however, it bears repeating that in summary judgment proceedings I.R.C.P. 56(e) requires that, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, *and shall show affirmatively that the affiant is competent to testify to the matters stated therein.*" (Emphasis added.)

I dissent because the affidavits of plaintiff's expert witness, Dr. Rattray, failed to demonstrate that he has the qualifications necessary to testify as an expert in this case. An adequate foundation was not laid by the mere inclusion of his conclusory statement, *e.g.,* "I am generally familiar with the standards of medical care expected. . . ." Rather, an adequate foundation is laid only when an affidavit initially sets out the facts necessary for a court to rule on an expert affiant's qualifications. *Casey v. Highlands Ins. Co.,* 100 Idaho·505, 508, 600

P.2d 1387, 1390 (1979) ("Where an affidavit merely states conclusions and does not set out facts, such supporting affidavit is inadmissible to show the absence of a genuine issue of material fact.").

There are multiple reasons for the inadequacy of Dr. Rattray's affidavits. First, his specialty was different than the defendants', and a medical expert in one field may not testify against a medical expert in another field unless he demonstrates that he knows the standards of the other specialty.[1] The only statement in the affidavits which would even suggest that Dr. Rattray, an obstetrician-gynecologist, knows the standards applicable to Dr. Prenger, a board certified family practitioner, and Dr. Yonkosky, a board certified general surgeon, is Dr. Rattray's own conclusory statement that "I am familiar with the professional standard of care applicable to the physicians Prenger and Yonkosky...." There is absolutely no factual foundation laid for Dr. Rattray's conclusion, nor are there any facts set out explaining how he gained his familiarity with the applicable standard of care for family practitioners and general surgeons. Accordingly, his affidavit is insufficient.

Particularly, Dr. Rattray made no factual showing of how he became aware of the local standard of care applicable to these defendants' specialties in the area serviced by the local hospital, in this case the East Shoshone Hospital, serving the Wallace/Kellogg area. I.C. § 6–1013. Dr. Rattray claims that he learned these defendants' standard of care while he was training for his own different medical specialty. However, there are again no factual statements to support his conclusory opinion in his affidavit. Furthermore, this cause of action accrued in the early 1980's

in Silverton, Idaho, and is far removed, in both time and place, from Dr. Rattray's training and experience in Pullman, Washington, in 1974.

I also dissent to the analysis propounded by the majority. First, ante at 768, 760 P.2d at 1184, the majority asserts that once an affidavit is rendered sufficient by the affiant's conclusory statement regarding his knowledge of local standards, then it is up to the defendant to establish deficiencies in the plaintiff's case by taking the deposition of the plaintiff's witness. However, this runs contrary to the rule requiring the plaintiff to initially establish his case with admissible evidence.

Secondly, the majority approvingly cites four cases from other jurisdictions. Ante at 768–769, 760 P.2d at 1184–1185. Even though cited for the proposition that Dr. Rattray was competent to testify regardless of his specialty, it should be noted that, without exception, in each case cited in the majority opinion a foundation regarding the expert's qualifications was laid before the respective experts were allowed to testify at all. For example, inter alia, in Fitzmaurice evidence was presented establishing the expert as a practicing surgeon, specializing in breast cancer surgery. He was also shown to be a professor, a lecturer, an author of textbooks, a consultant, a member of a breast cancer task force, and the principal investigator of the Cooperative Breast Cancer Study Group. Likewise, each of the cited cases following Fitzmaurice contains a recital of the foundation that was laid prior to the expert's testimony. The majority should follow the lead of its own cited cases.[2]

In sum, I continue to adhere to my views expressed in Pearson v. Parsons, supra. Specifically, in medical malpractice proceed-

1. Buck v. St. Clair, 108 Idaho 743, 702 P.2d 781 (1985), would not have let him testify at all. Nevertheless, the majority in Pearson v. Parsons, supra, effectively overruled what was left of Buck after our decision in Grimes v. Green, 113 Idaho 519, 746 P.2d 978 (1987).

2. The majority attempts to dispose of this inconsistency by stating, "[E]ach of the above-cited cases did not involve summary judgment, but rather involved testimony of witnesses at trial

where there could be, and was, a full development of their expertise...." Ante at 769, 760 P.2d at 1185. The cited cases and the instant case cannot be so distinguished, however. If anything, there is more need for an adequate foundation in a summary judgment proceeding than there is at a full trial because summary judgment lacks safeguards, such as cross examination and witness demeanor, that are available at trial.

ings, the affidavits must lay a factual foundation for the doctor's qualifications before he is allowed to render his expert opinion. Here, the affidavit of Dr. Rattray does not lay an adequate foundation. Accordingly, his affidavit is deficient and his opinion expressed therein is not admissible. I would affirm the district court.