775 P.2d 106

**Donald STRODE and Viola Strode, husband and wife, Plaintiff-appellants,**

v.

**William D. LENZI, M.D., Defendant-respondent.**

**No. 17326.**

Supreme Court of Idaho.

May 5, 1989.

Rehearing Denied July 11, 1989.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for appellants. Kenneth L. Pedersen argued.

Quane, Smith, Howard & Hull, Boise, for respondent. Andrew C. Brassey argued.

BAKES, Justice.

Plaintiffs Donald and Viola Strode appeal a summary judgment for defendant William D. Lenzi, M.D., in a medical malpractice case. The Strodes sued Dr. Lenzi and others alleging, inter alia, that Dr. Lenzi was negligent in the medical care provided Donald Strode (Strode) in relation to a shoulder operation. On May 4, 1984, Dr. Lenzi, a board certified orthopedic surgeon, performed rotator cuff repair surgery on Strode at St. Alphonsus Regional Medical Center in Boise. Following surgery, Strode suffered a stroke allegedly resulting in permanent speech loss, partial paralysis and brain damage.

Strode alleges that Dr. Lenzi negligently failed to detect carotid artery disease prior to the surgery. As a result of this disease

the arteries carrying blood to Strode's brain were nearly blocked. A drop in his blood pressure during the surgery was alleged to have caused the stroke due to insufficient pressure to force sufficient blood to his brain. Strode alleges that Dr. Lenzi negligently failed to conduct a proper pre-operative physical examination, failed to detect Strode's occluded carotid arteries, and negligently recommended and performed surgery under general anesthesia without adequately considering Strode's underlying vascular disease. According to Strode, if Dr. Lenzi had listened to his carotid arteries, the doctor would have detected bruits (the sound of blood movement in the occluded arteries) and concluded that Strode had carotid artery disease.

Dr. Lenzi moved for summary judgment supported by an affidavit in which he stated that, based upon his personal knowledge to a reasonable medical certainty, he had complied with the medical procedures utilized by orthopedic surgeons who practice in Boise, Idaho. The affidavit further states that Dr. Lenzi holds staff privileges at both St. Alphonsus Regional Medical Center and St. Luke's Regional Medical Center and that he was "familiar with the standard of health care practice applicable to physicians engaged in the medical practice of orthopedic surgery in Boise, Idaho, in 1984."

The plaintiffs attempted to counter the defendant's motion for summary judgment with the affidavit of Robert Hall, M.D., an orthopedic surgeon who practices in Chicago, Illinois. The district court reviewed the affidavit and concluded that the affidavit of Dr. Hall did not demonstrate that he was qualified to testify concerning the community standard of health care practiced by orthopedic surgeons in Boise, Idaho. However, the trial court gave the Strodes additional time to supplement the affidavit of Dr. Hall to remedy the deficiency which the trial court perceived in that affidavit. As a result the Strodes filed a supplemental affidavit of Dr. Hall. In his supplemental affidavit Dr. Hall stated:

"The standard of care for a board certified orthopedic surgeon in Boise is that set by the American Academy of Orthopedic Surgeons and is the same standard under which I practice in Chicago, Illinois. I am, therefore, familiar with what is expected of a board certified orthopedic surgeon in Boise."

The trial court concluded that Dr. Hall still had not demonstrated that he was familiar with the applicable community standard of health care practiced by orthopedic surgeons in Boise, Idaho, as is required by I.C. § 6–1012. The trial court further concluded that Dr. Hall's supplemental affidavit did not demonstrate that he had any actual personal knowledge of the community standard. The trial court therefore held that under I.C. § 6–1012, *Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987), and *Buck v. St. Clair*, 108 Idaho 743, 702 P.2d 781 (1985), Dr. Lenzi was entitled to summary judgment.

The Strodes frame only one issue for appeal: whether an out-of-state board-certified orthopedic surgeon is competent to testify concerning the standard of care applicable to a board-certified orthopedic surgeon practicing in Boise, Idaho, without first demonstrating that he possesses actual knowledge of the applicable community standard.

The Strodes argue that, in order to testify in a medical malpractice case, a nationally certified orthopedic surgeon from Chicago, Illinois, should not have to inquire to determine the standard of care practiced by local orthopedic surgeons in Boise, Idaho. Because Dr. Hall and Dr. Lenzi are both certified by the American Academy of Orthopedic Surgeons, Strodes' argument concludes, both are obliged to follow a national standard of care which does not vary between communities.

I.C. § 6–1012 requires that in medical malpractice cases, a "plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently *failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been*

*provided....*" (Emphasis added.) Further, I.C. § 6–1013 sets out what an expert witness must show to establish that he is familiar with the local community standard:

**6–1013. Testimony of expert witness on community standard.**—The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

Strode's argument that Dr. Hall did not have to establish that he possessed "actual knowledge of the applicable ... community standard" for orthopedic surgeons in Boise, Idaho, because both he and Dr. Lenzi were certified by the American Academy of Orthopedic Surgeons, contradicts both I.C. §§ 6–1012 and 6–1013, and the decisions of this Court which have consistently applied those statutes. *Pearson v. Parsons,* 114 Idaho 334, 757 P.2d 197 (1988); *Grimes v. Green,* 113 Idaho 519, 746 P.2d 978 (1987); *and Buck v. St. Clair,* 108 Idaho 743, 702 P.2d 781 (1985).[1]

In order for a plaintiff to recover in a medical malpractice case, he or she must produce testimony from a competent expert who "possesses professional knowl-

edge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed...." I.C. § 6–1013. I.C. § 6–1013 further provides that, in order to testify, a competent expert residing outside the applicable community must "adequately familiariz[e] himself with the standards and practices of (a particular) such area...." Thus, an expert from outside the state must demonstrate that he possesses knowledge of the local community standard. If he is board certified in the same specialty, he must, at a minimum, inquire of a local specialist to determine whether the local community standard varies from the national standard for that board certified specialty. *Buck v. St. Clair,* 108 Idaho 743, 702 P.2d 781 (1985). Totally insufficient are statements such as Dr. Hall's naked assertion that because he is familiar with the national standard of care he is also "familiar with what is expected of a board certified orthopedic surgeon in Boise." Dr. Hall's affidavits show no effort to obtain information regarding the local standard of care and, as the trial court noted, are "conclusory statements which are incapable of objective evaluation by anyone...." Consequently, there was no showing of a genuine issue of fact which must be tried. The trial court did not err in entering summary judgment for Dr. Lenzi.

Affirmed. Costs to respondent. No attorney fees.

SHEPARD, C.J., and JOHNSON, J., concur.

HUNTLEY, Justice, dissenting.

A great deal of mischief and injustice is being perpetrated upon the people of Idaho by I.C. § 6–1012 and the overly restrictive construction this Court gives it. Perhaps the legislature will act to make the statute more clear and equitable.

---

1. Even prior to the enactment of I.C. § 6–1012 in 1976, this Court had held that medical doctors were to be held to the same standard of care and skill ordinarily exercised by competent doctors in the same or like locality. *See Davis v. Potter,* 51 Idaho 81, 2 P.2d 318 (1931); *Swanson v. Wasson,* 45 Idaho 309, 262 P. 147 (1927).

Nowhere does that statute or I.C. § 6–1013 require that the expert witness procure his knowledge of the community standard by telephoning a local doctor or physically speaking with a local doctor.

That statute simply provides that the expert must familiarize himself with the standards and practices of an area and that he possess professional knowledge and expertise coupled with actual knowledge of the applicable community standard to which his or her expert opinion testimony is addressed.[2]

It is only this Court which has legislated this requirement of making a telephone call or a direct inquiry.

There are certain things in the practice of medicine which by definition are the standards for all doctors and there are certain things which are the standards for all board certified doctors regardless of where they practice. For example, it is the standard both for board certified doctors, general practitioners, nurses, and boy scouts, that if someone is bleeding profusely from an artery, that measures be taken to stem the flow of blood. No phone call is necessary to establish that standard whether we are dealing with a board certified neurosurgeon or a nurse practitioner.

I would rule that for purposes of summary judgment, when we are dealing with basic, widely acknowledged fundamentals of the practice of medicine, that a prima facie case is made out which will survive summary judgment if a doctor who is board certified testifies as to the minimum standard for all doctors of that certification everywhere.

It is simply a fundamental logic process that if: (1) All board certified orthopedic surgeons must at a minimum listen to the carotid artery; and (2) Doctor William Lenzi is a board certified orthopedic surgeon; therefore, (3) his standard is to place the stethoscope on the neck and listen to the artery.

Stated another way, if a witness testifies that no board certified doctor in the world should fail to listen to that artery, and Boise, Idaho is a part of the world, then the Boise standard has been met.

Such a prima facie case is particularly made out in the instant case where the testimony and affidavits of the defense witnesses do not state specifically that an orthopedic surgeon in Boise should not listen to the artery, but merely state a conclusion that Dr. Lenzi met the Boise standard of care.

The facts in this case are most compelling for the fact that a prima facie case has been made. The fact was that the medical records available to the defendant doctor demonstrated that this patient had high blood pressure and a history of smoking. All doctors know that such persons have a high incidence of occluded carotid arteries and that a patient undergoing surgery which lowers blood pressure stands to suffer a loss of blood flow to the brain. The physical examination to detect that condition, which would mean that surgery should not be performed without certain precautions, is simply to move the stethoscope from the situs of the chest examination three or four inches upward toward the neck, and listen to the artery. Dr. Hall's affidavit stated:

VIII.

Dr. William Lenzi, as the orthopedic surgeon performing Mr. Strode's rotator

---

2. Idaho Code § 6–1013 reads in full:

**6–1013. Testimony of expert witness on community standard.**—The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

cuff operation, was responsible for performing an adequate pre-operative physical examination of Donald Strode. An adequate pre-operative physical examination would have included listening to Mr. Strode's carotid arteries, which would have detected bruits (sound of the blood movement in the occluded arteries) and thereby the fact that Mr. Strode had occluded carotid arteries.

.     .     .     .     .

## X.

Dr. William Lenzi breached the standard of care applicable to an orthopedic surgeon in Boise, Idaho, in May 1984 by failing to perform an adequate pre-operative physical examination of Donald Strode prior to the rotator cuff operation, by failing to detect Mr. Strode's carotid arteries were significantly occluded, and by failing to obtain a consultation with a qualified vascular surgeon or neurosurgeon concerning a carotid endarterectomy.

This testimony clearly raises an issue of fact which precludes an award of summary judgment.

Of considerable significance in this case is that no doctor has testified by way of deposition or affidavit or otherwise that the standard of care for Boise orthopedic surgeons is not to listen to the artery. We simply have a conclusion that the standard of care was met, but absolutely no testimony as to what the *local deviation* specifically is that is practiced in Boise. I suspect that no Boise doctor would take the stand and say that his standard was that he would not listen to that artery under these circumstances.

Accordingly, we do the people of Idaho a great disservice when we give so narrow and illogical a reading to this statute.

I would reverse and remand for trial.

BISTLINE, J., concurs.

BISTLINE, Justice, concurring in the opinion of Huntley, J.

First of all, it is to be noted that the district court dismissed this action as a summary judgment proceeding. Justice Huntley may be too kind in speaking of this Court's "overly restrictive construction" placed upon the legislature's I.C. §§ 6–1012, 6–1013. Worse, perhaps than the super-technical gloss which [a majority of] this Court applies to the legislative language as to qualifying an expert, is the obvious ignoring of the plain language by which the legislature directs the time at which the expert must qualify as an expert.

Section 6–1013 *purports* to direct and control how an expert qualifies to testify. Section 6–1012 directs and controls when and where the expert must qualify. And it certainly is not required that time and money be expended in doing so *before trial* and in a summary judgment proceeding.

I ask, find if you can more explicit language than this:

> ... such claimant or plaintiff must, *as an essential part of his or her case in chief,* affirmatively prove by direct expert testimony, ...

The insurance carriers defending medical malpractice cases have been having a heyday by reason of the district courts' failures to hold them to the plain language of the statute. The statute is there, and it is there to be followed.

The defense in a case is certainly able to engage in discovery as to who will be plaintiff's experts at trial, and undoubtedly has the right to depose them in advance of trial, but the drafters of this particular legislation went this far, and this far only: "Be prepared *at trial* to meet the requirement of putting forth qualified experts."

That raises a question, which as I understand it, although I have not yet been brought to agree with its underlying premise, is Rule 1102 of the Idaho Rules of Evidence: *"Statutory provisions and rules* governing the admissibility of evidence, to the extent they are evidentiary and to the extent that they are in conflict with applicable rules of Idaho Rules of Evidence, are of no force and effect." Article VII of those Idaho Rules deals with opinions and expert testimony. Rules 702,

703, and 704 of that article appear to be especially applicable.

HUNTLEY, J., concurs.