868 P.2d 1224

Cleon L. RHODEHOUSE and Norma R. Rhodehouse, Plaintiffs–Appellants,

v.

Dr. B. Shields STUTTS, Defendant–Respondent.

No. 19318.

Supreme Court of Idaho,
Idaho Falls, April 1993 Term.

Feb. 7, 1994.

Kent A. Higgins, Idaho Falls, for plaintiffs-appellants.

Quane, Smith, Howard & Hull, Boise, for defendant-respondent. Richard L. Stubbs argued.

TROUT, Justice.

This is a medical malpractice case in which the trial court entered summary judgment in favor of the defendant doctor. The trial court found that the doctor's affidavit submitted by plaintiff was not admissible evidence under I.R.C.P. 56(e) because there was an insufficient foundation to show the doctor's familiarity with the local standard of care. We affirm the decision of the district court.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff Cleon Rhodehouse (Rhodehouse) suffered a heart attack on August 9, 1987, and was treated by the defendant, Dr. B. Shields Stutts (Stutts), at Eastern Idaho Regional Medical Center in Idaho Falls, Idaho. Stutts performed an emergency angioplasty, a procedure in which a catheter guide wire is placed through the obstruction followed by a balloon catheter which is passed over the wire and then inflated, removing the obstruction. After the angioplasty was performed, Rhodehouse's condition improved and he remained stabilized until August 12. At that time Rhodehouse was taken off anti-coagulants in anticipation of removing his catheterization lines. Shortly after the anti-coagulant was discontinued, Rhodehouse's chest pains recurred and Stutts found that Rhodehouse's artery had again become obstructed. Stutts then attempted another angioplasty.

During this procedure the tip of the angioplasty guide wire broke in a small tributary off Rhodehouse's left anterior descending artery, where it remained after the balloon catheter was removed. At this point, Stutts had Rhodehouse flown to Salt Lake City, Utah, for cardiovascular surgery to remove a blood clot which was forming. By the time Rhodehouse arrived in Salt Lake City, the doctors there concluded that the maximum damage to his heart muscle had already occurred and there would not be enough benefit to justify surgery. Rhodehouse was returned to Idaho.

On August 10, 1989, Rhodehouse filed suit against the Eastern Idaho Regional Medical Center (Medical Center) and Advanced Cardiovascular Systems, the manufacturer of the catheter used in the angioplasty. On April 30, 1990, Rhodehouse amended his complaint, adding Stutts as a named defendant. Rhodehouse alleged that Stutts was negligent in taking him off anti-coagulants and misdirecting the catheter guide wire into a small branch of the artery during the balloon angioplasty, causing the guide wire to bend and break.

The court granted the Medical Center's motion for summary judgment on July 30, 1990, because Rhodehouse had not met his burden of showing the standard of health care breached. The complaint against Advanced Cardiovascular Systems was dismissed on March 15, 1991, due to a settlement agreement.

Stutts moved for summary judgment on August 31, 1990, supported by his own affidavit which stated that he was familiar with the standard of care in Idaho Falls based on his practice of cardiology in Idaho Falls and his association with other physicians in the area. Stutts then asserted that he had fully complied with the community standard of care in his treatment of Rhodehouse.

The trial court granted Rhodehouse a continuance of the October 1, 1990 summary judgment hearing in order to permit additional time for discovery. The court then permitted the late filing of plaintiff's expert's affidavit, which was submitted one day prior to the summary judgment hearing on Janu-

ary 4, 1991. The court then heard oral arguments on the summary judgment motion on January 4.

In opposition to Stutts' motion for summary judgment, Rhodehouse submitted the affidavit of Dr. Ronald D. Jenkins which asserted that: (1) he was a physician certified in cardiology in Salt Lake City, Utah; (2) he was an instructor in heart catheterization and angioplasty at Utah Medical School; and (3) he had reviewed Stutts' deposition from October 26, 1990, the 35mm cine films and the hospital records for the angioplasty operations performed on Cleon Rhodehouse. On the issue of the standard of care Dr. Jenkins' affidavit provides:

> 4. I state my opinion based upon the documents and films reviewed, my personal knowledge and training and with a reasonable medical certainty.

> 5. I am familiar with the professional standard of care applicable to the physician Dr. B. Shields Stutts engaged in the treatment of Cleon Rhodehouse in Idaho Falls, Idaho in 1987. Based upon my review of the medical records and treatment of Mr. Rhodehouse by Dr. Stutts, I am of the opinion Dr. Stutts breached the standard of care applicable to a physician engaged in the treatment of cases such as Cleon Rhodehouse in Idaho Falls, Idaho, including but not necessarily limited to the following particulars ...

At the close of the argument on the summary judgment motion, Rhodehouse's counsel stated:

> [B]ecause we chose that language [in Jenkins' affidavit] expressly from a case that the Court approved [*Clarke v. Prenger,* 114 Idaho 766, 760 P.2d 1182 (1988) ], in the event that the Court finds that insufficient we would like to have leave to amend the affidavit.

In response, the court advised counsel that he would have to make "an appropriate motion" and that the court was "more than inclined" to grant the summary judgment motion if the standard had not been met by plaintiff's affidavit.

The parties submitted briefs on the summary judgment motion and the court again heard arguments on February 6, 1991. The trial court found that Jenkins' affidavit was not sufficient to create a question of fact as to an alleged breach of the standard of care by Stutts. Accordingly, the court granted summary judgment in favor of Stutts and denied Rhodehouse time to cure the deficiency.

Rhodehouse moved for reconsideration on March 25, 1991, arguing that Jenkins' affidavit was sufficient and that the court had not given him an opportunity to supplement the affidavit. The trial court denied Rhodehouse's motion to reconsider, stating that Rhodehouse had had considerable time since the first argument on the summary judgment to file a motion and supplement his affidavit, and yet Rhodehouse continued to rely on the affidavit in its original form. The court found that Jenkins' statements about the local standard of care were not admissible under I.R.C.P. 56(e), and thus the court refused to reconsider the earlier ruling granting respondent's motion for summary judgment.

On appeal, Rhodehouse argues that Jenkins' affidavit shows sufficient familiarity with the local standard of care to withstand a motion for summary judgment and that the trial court abused its discretion by not granting him additional time to supplement Jenkins' affidavit.

## II.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

It is axiomatic that on summary judgment, the Court views all facts and inferences from the record in favor of the nonmoving party and the moving party has the burden of proving the absence of genuine issues of material fact. *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 681, 837 P.2d 805, 806 (1992). These standards

apply to motions for summary judgment in medical malpractice cases. *Pearson v. Parsons*, 114 Idaho 334, 338, 757 P.2d 197, 201 (1988); *see also Clarke v. Prenger*, 114 Idaho 766, 760 P.2d 1182 (1988). I.R.C.P. 56(e) provides that the adverse party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial. *East Lizard Butte*, 122 Idaho at 681, 837 P.2d at 806. Furthermore, the affidavits supporting or opposing the motion "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." I.R.C.P. 56(e).

■ Some form of objection is ordinarily necessary to preserve the right to challenge the admissibility of evidence under Rule 56(e). *Hecla Mining Co. v. Star–Morning Mining Co.*, 122 Idaho 778, 783, 839 P.2d 1192, 1197 (1992). However, "[t]here is no authority in this state that requires a motion to strike or an objection before a trial court may exclude or not consider evidence offered by a party." *Id.*, at 782–83, 839 P.2d at 1196–97.

In the case at bar, the trial court indicated that it was excluding evidence in Dr. Jenkins' affidavit based on Rule 56(e). In ruling on Rhodehouse's motion for reconsideration, the court stated:

Now, Rule 56(e) and Rule 56 itself talked about the affidavits. Their affidavits must be of the type that the evidence set forth therein is admissible at trial, it has to be based on actual knowledge.

As I read Dr. Jenkins' affidavit ... it appear to me at best the doctor is telling us that, the legal conclusion, that he knows the standard of care. He doesn't say how he gets it or really what it is. He infers it's the same as the Board Certified standard. And all along I have thought that that's not sufficient. . . .

Based on Dr. Jenkins' affidavit, even when I consider the inferences most favorable to the non-moving party, I'm still at a point that at best that's a legal conclusion and would not be admissible at trial, there is nothing there to support it, and we're right back in the catch twenty-two situation where we started.

I appreciate the equities involved and I just have to decide this based on the Rule as I interpret the Rule and apply it to what I have in front of me. I must deny the motion to reconsider.

Accordingly, although Stutts only objected to the admissibility of Jenkins' affidavit under I.C. §§ 6–1012 and –1013, the trial court excluded evidence of the local standard of care in Jenkins' affidavit based on Rule 56(e). For this reason, we may consider Rule 56(e) on appeal. *See Hecla Mining*, 122 Idaho at 783, 839 P.2d at 1197.

Recently, the Court discussed the interplay between Rule 56(e) and I.C. §§ 6–1012 and –1013. *Dunlap v. Garner*, 1993 WL 163873 (filed May 19, 1993). The Court noted that the question of admissibility under Rule 56(e) is a threshold question to be analyzed before applying the liberal construction and reasonable inferences rules required in motions for summary judgment. *Id.* at n. 3, *citing Hecla Mining*, 122 Idaho at 784, 839 P.2d at 1198.

■ Since the trial court's decision in the present case was based at least in part on Rule 56(e), we must consider the admissibility of evidence under the Rule before considering whether the affidavit is sufficient to withstand summary judgment under I.C. §§ 6–1012 and –1013. When reviewing evidentiary questions on summary judgment, the trial court must look to the affidavit itself and determine whether it alleges facts which, if taken as true, would render the evidence therein admissible. *Dunlap v. Garner*, 1993 WL 163873 (filed May 19, 1993). Idaho Code § 6–1012 requires a plaintiff in medical malpractice cases to prove by direct expert testimony that the defendant negligently failed to meet the "applicable standard of health care practice of the community." Idaho Code § 6–1013 sets forth the particular requirements for admissibility of that expert medical testimony:

[S]uch expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; . . . .

Added to these requirements in the summary judgment context is the additional provision of I.R.C.P. 56(e) that the affidavits must "set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

In order to show actual knowledge of the local standard of care under I.C. § 6–1013, the Court has held that a medical expert from out-of-the-area must inquire of a local specialist as to the local community standard of care. *Strode v. Lenzi*, 116 Idaho 214, 216, 775 P.2d 106, 108 (1989) (before a board-certified specialist from outside the state may testify as to the standard of care, the specialist "must, at a minimum, inquire of a local specialist to determine whether the local community standard varies from the national standard for that board certified specialty"); *Dunlap v. Garner*, —— Idaho ——, —— P.2d ——, 1993 WL 163873 (filed May 19, 1993) (the Court found there was sufficient foundation in the plaintiff's affidavit to survive a challenge under Rule 56(e) where the expert had contacted local health care practitioners concerning the standard of care).

In the case at bar, Jenkins stated in his affidavit that he was familiar with the applicable local standard of care but he did not state how he became familiar with this standard. Moreover, nothing in the affidavit indicates that Jenkins contacted a local doctor to inquire about the applicable standard of care.

Rhodehouse argues that the present case is analogous to *Kozlowski v. Rush*, 121 Idaho 825, 828 P.2d 854 (1992), which involved the admissibility of expert testimony at trial. In *Kozlowski*, the plaintiff's out-of-state expert reviewed a deposition in which a local specialist testified that the local standard was no different than the national standard. 121 Idaho at 829, 828 P.2d at 858. Under these circumstances, the Court found that the plaintiff's expert was sufficiently familiar with the local standard of care and that the trial court erred by not allowing his testimony at trial. *Id.* at 830, 828 P.2d at 859.

In the present case, Rhodehouse argues that Jenkins became familiar with the local standard through his review of the deposition of Stutts, the 35mm cine films and the hospital records. While it may be possible for an expert to become familiar with the local standard of care by reviewing the defendant doctor's deposition, we are not presented with that situation here. Unlike the physician in *Kozlowski*, Stutts never stated that the local standard of care was the same as the national standard, nor in fact did Stutts make any direct reference to the local standard of care. Furthermore, we have indicated that an expert cannot become familiar with the local standard of care merely by reviewing hospital records and the actions of a local physician. *See Gubler v. Boe*, 120 Idaho 294, 297–98, 815 P.2d 1034, 1037–38 (1991). Because there is no indication that Jenkins inquired of a local doctor, and Stutts did not state that the local standard of care was the same as the national standard, there is not sufficient foundation in Jenkins' affidavit to show that he had actual knowledge of the applicable community standard. Moreover, unlike *Kozlowski*, we are presented here with a case disposed of at summary judgment and we must analyze the evidence in light of the requirements of Rule 56(e).

Rhodehouse also argues that Jenkins' affidavit is sufficient to withstand summary judgment because he used the language directly from affidavits submitted and approved of in *Clarke v. Prenger*, 114 Idaho 766, 760 P.2d 1182 (1988), changing only the names of the doctor and the location of the alleged malpractice. Unfortunately counsel

misapprehends the basis for the Court's ruling and approval of the language in *Clarke*. The issue in *Clarke* was whether an affidavit containing only the bare statement of an expert witness that he was familiar with the local standard of care was sufficient to withstand a summary judgment challenge under I.C. §§ 6–1012 and –1013. It is clear from the transcript of the summary judgment hearing in *Clarke* that neither the attorneys nor the district judge mentioned the requirements of Rule 56; thus we must assume that the district judge considered all of the expert's testimony presented by the affidavits. It was only in their briefs on appeal that either attorney mentioned the requirements of Rule 56. It would not have been appropriate for this Court to consider the sufficiency of the affidavits at that point when it had not been an issue presented to the district judge. The Court held that the expert's affidavit, together with all legitimate inferences flowing therefrom, was sufficient to preclude a challenge to the issuance of summary judgment on the basis of I.C. §§ 6–1012 and –1013. *Id.* at 768, 760 P.2d at 1184.

Unlike *Clarke*, the issue in the case at bar is not whether Jenkins' affidavit is sufficient to withstand a summary judgment challenge under I.C. §§ 6–1012 and –1013, although that admittedly was the only basis for respondent's objection at the time of the hearing. Rather, based upon the trial judge's comments and rulings, the present case involves the threshold issue of admissibility of evidence under Rule 56(e). The trial court found that Jenkins' affidavit did not present sufficient facts admissible in evidence to demonstrate affirmatively that he was familiar with the local standard of care. Because the court found Jenkins' affidavit was not admissible evidence under Rule 56(e), we do not reach the requirements imposed by § 6–1013 which were considered in *Clarke*.

In the case at bar, the trial court had the discretion to decide on the admissibility of evidence under Rule 56(e), whether or not this issue was specifically raised by the parties. The trial court correctly reasoned that Jenkins' only showing of knowledge of the local standard was his unsupported conclusory statement in his affidavit, and that this was an insufficient foundation for admissibility. Accordingly, the trial court did not err in excluding those portions of the Jenkins' affidavit relating to the local standard of care. Without those, there remained no genuine issues of material fact which would preclude the granting of summary judgment.

## III.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING RHODEHOUSE ADDITIONAL TIME TO SUPPLEMENT HIS AFFIDAVIT

Rhodehouse argues that the trial court abused its discretion in denying him additional time to supplement the Jenkins' affidavit. The decision to extend time to supplement an affidavit is within the sound discretion of the trial court. *See* I.R.C.P. 56(f); *Johnston v. Pascoe*, 100 Idaho 414, 418–19, 599 P.2d 985, 989–90 (1979). In determining whether a trial court abused its discretion this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

At the close of the summary judgment arguments on January 4, 1991, Rhodehouse's attorney stated:

> Simply, Your Honor, if—and I guess this can be raised by a separate motion, because we chose that language [for Dr. Jenkins' affidavit] expressly from a case that the Court approved, in the event that the Court finds that insufficient we would like to have leave to amend the affidavit.

The trial court responded:

> *You'll have to make an appropriate motion. I'd be more than inclined if it*

doesn't meet the standard to grant the Motion for Summary Judgment, I want to make sure, I'm not sure *Strode* is the last word. Anything else, gentlemen? (Emphasis added.)

█ The trial court clearly informed Rhodehouse he would have to submit "an appropriate motion" in order to amend his affidavit. The trial court is not obligated to give advice to counsel that an affidavit or pleading does not conform to the rules, statutes or case law or to give counsel additional time within which to correct the defects. Rhodehouse did not file a motion to supplement his affidavit before the court heard arguments on the summary judgment motion again one month later on February 6, 1991. Nor did Rhodehouse file a motion or attempt to supplement his affidavit before the arguments on his motion for reconsideration on March 25, 1991. Throughout this time period Rhodehouse continued to argue the same theory, that Jenkins' original affidavit was sufficient under *Clarke v. Prenger*, disregarding the further requirements of Rule 56(e).

The trial court was not presented with a motion upon which to rule because Rhodehouse did not file a motion or attempt to supplement Jenkins' affidavit. Instead, Rhodehouse chose to rely on his original affidavit and the holding of *Clarke v. Prenger*. The trial court was aware of its discretionary power and indicated that Rhodehouse had already had considerable time to file a motion or attempt to supplement Jenkins' affidavit. Under these circumstances we cannot say the trial court abused its discretion in denying Rhodehouse leave to amend.

## IV.

### CONCLUSION

For the reasons stated herein, the summary judgment granted by the trial court is affirmed. We award no costs or attorney fees on appeal.

McDEVITT, C.J., and BISTLINE and JOHNSON, JJ. concur.

SILAK, Justice, specially concurring:

I write to make plain the deficiency in Dr. Stutts' deposition testimony which leads the Court to hold that although an expert witness may rely upon the deposition testimony of a defendant physician, here the deposition testimony was inadequate to form the basis of Dr. Jenkins' knowledge of the local standard of care.

Dr. Stutts' was thoroughly questioned at his deposition concerning the specifics of his treatment of Cleon Rhodehouse. Following a lengthy series of questions about this treatment, counsel asked whether his conduct complied with the applicable standard of care. Stutts replied that it did. My review of the deposition reveals, however, that Dr. Stutts was never asked to describe, in the abstract, the standard of care in Idaho Falls in 1987 applicable to a cardiologist performing an invasive procedure such as an angioplasty. Nor was Stutts interrogated as to whether the national standard of care for cardiologists performing such procedures was the same as the local standard.

Thus, the rule to be drawn from the Court's decision here is that for Rule 56(e) admissibility purposes, an expert witness must rely upon a direct affirmative statement of the local standard of care, either from the deposition testimony of the defendant physician or from other sources, such as conversations with local doctors. An expert may not draw inferences about the local standard of care from deposition testimony concerning the actual course of care rendered to a patient by the defendant.