935 P.2d 165

**Colleen EVANS, Plaintiff–Appellant,**

v.

**Garry GRISWOLD, an individual, dba Ada–Boise Vision Clinic, Defendant–Respondent.**

**No. 22794.**

Supreme Court of Idaho,
Boise, January 1997 Term.

April 7, 1997.

Lawrence G. Sirhall, Jr., argued and Iver J. Longeteig III, Boise, for Plaintiff–Appellant.

Quane, Smith, Howard & Hull, Boise, for Defendant–Respondent. Bruce R. McAllister argued, Boise.

SILAK, Justice.

This is a malpractice action against an optometrist. The optometrist prescribed an antibiotic, Gentamicin, for a low grade infection. The appellant experienced a toxic reaction to Gentamicin. The district court granted the optometrist's summary judgment motion on the basis that appellant's expert witness, an ophthalmologist, failed to demonstrate familiarity with the standard of care applicable to the practice of optometry. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Appellant Colleen Evans (Evans) contacted Eye Masters, a retail optical store, regarding a vision check-up. An employee of Eye Masters referred Evans to the independent optometrist at Master Eye Associates where she met Respondent Garry Griswold (Dr. Griswold) on October 29, 1993. Dr. Griswold was either an employee and/or independent contractor of Master Eye Associates on that date.

Dr. Griswold examined Evans' eyes and wrote a prescription for new glasses. Griswold also suspected that Evans suffered from keratoconjunctivitis, a bacterial infection. As a result, Dr. Griswold prescribed Gentamicin, a therapeutic pharmaceutical agent.

Evans used the medication in accordance with Dr. Griswold's instructions over the ensuing weekend. On Monday, November 1, 1993, Evans' eye infection had worsened. She visited Dr. Griswold's office at Ada–Boise Vision Clinic. Dr. Griswold's optometry notes from that day state: "Pt. self treated 'eye infection' 1–2 wks ago with erythromycin—seemed to get better. Noted eyes matted shut this a.m. Felt vision getting worse." Under a section titled "Plan", Griswold wrote: "Stop all meds to rule out toxic rxn, if condition worsens consider culture and sensitivity and change to ciloxin to rule out bact. keratoconjunctivitis."

On November 2, 1993, Evans called Dr. Griswold regarding the deterioration of her

eyesight. Griswold instructed her to go to St. Luke's Medical Center out-patient laboratory and have a culture performed on her eyes. On November 3, 1993, Dr. Griswold called Evans and informed her that after 24 hours, no organisms had been detected. Dr. Griswold informed Evans that she did not have a bacterial infection, but that she probably had a viral infection. Dr. Griswold told Evans to continue using the Ciloxin to prevent any secondary infections from occurring.

In spite of the elimination of Gentamicin, Evans' eye condition appeared to worsen. Evans returned to Dr. Griswold's office on November 13, 1993. Dr. Griswold performed another examination of Evans' eyes and believed that she was in the middle phase of the viral infection. He instructed Evans to resume using the Gentamicin for the next ten days.

On November 15, 1993, Evans decided to obtain treatment from ophthalmologist Dr. Mark Borup (Dr. Borup). He examined Evans' eyes and concluded that she was suffering from a moderate toxic reaction to the Gentamicin or preservatives contained in the Gentamicin solution. Dr. Borup also thought it was possible that Evans was suffering from a viral or bacterial infection or both. To counteract the toxic reaction, Dr. Borup stopped the antibiotics for four days, and prescribed a lubricating steroid ointment to soothe and heal the eyes. By November 22, 1993, Evans had improved. By November 29, 1993, she had continued to improve, but showed symptoms of a severe dry eye condition, which, according to Dr. Borup, is quite common for middle aged patients in the dry climate of Idaho.

In January 1995, Evans filed suit against Dr. Griswold alleging that he violated the optometry standard of care by failing to recognize a toxic reaction to taking Gentamicin. Evans also alleged that Dr. Griswold violated the optometry standard of care by failing to refer her to a physician at an earlier point in time.

Dr. Griswold filed a motion for summary judgment and his own supporting affidavit. In his affidavit, Dr. Griswold stated that he is a licensed optometrist, that he had actual knowledge of the standard of care applicable to his treatment of Evans for the year in question, and that his treatment of Evans complied in all respects with the standard of health care applicable to individuals engaged in the practice of optometry in Boise, Idaho.

Evans filed an affidavit of Dr. Borup in opposition to Dr. Griswold's motion for summary judgment. Dr. Borup stated in his affidavit that he was familiar with the standard of care as it existed in Boise, Idaho, in October and November 1993, as it pertained to the care, treatment and management of diseases and disorders of the eye, including the use of pharmaceutical agents for therapeutic use, and that the standard of care relative to the use of pharmaceutical agents for therapeutic use was the same for both ophthalmologists and optometrists who prescribed pharmaceutical agents for therapeutic use. Dr. Borup concluded that Dr. Griswold failed to meet this standard of care.

The district court granted Dr. Griswold's motion for summary judgment, ruling that an action against an optometrist falls under the Idaho Healthcare Malpractice statutes, I.C. § 6–1012 and § 6–1013. The court further ruled that the testimony of Dr. Borup was deficient because it did not sufficiently demonstrate knowledge as to the applicable standard of care.

Evans filed a motion for reconsideration, but the district court affirmed the original grant of summary judgment re-emphasizing that Evans was required to lay a foundation that a standard of care expert possesses "professional knowledge and expertise coupled with actual knowledge of the applicable standard." The court ruled that an ophthalmologist can testify against an optometrist only if the ophthalmologist becomes knowledgeable as to the standard of an optometrist prescribing medications. Evans appeals.

## II.

### ISSUES ON APPEAL

Whether, as a matter of law, an optometrist who prescribes a therapeutic pharmaceutical agent for use in the human eye is held to the same standard of care as an

ophthalmologist who also prescribes the same therapeutic pharmaceutical agent for use in the human eye.

Dr. Griswold raises the following additional issue on appeal:

Whether Dr. Griswold is entitled to attorney fees on appeal pursuant to I.C. § 12–121.

## III.

### STANDARD OF REVIEW

■ It is well-established that on a motion for summary judgment, the Court views all facts and inferences from the record in favor of the non-moving party and the moving party has the burden of proving the absence of genuine issues of material fact. *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994). This standard applies to summary judgment motions in medical malpractice cases as well. *Rhodehouse v. Stutts*, 125 Idaho 208, 211, 868 P.2d 1224, 1227 (1994); *Pearson v. Parsons*, 114 Idaho 334, 338, 757 P.2d 197, 201 (1988). I.R.C.P. 56(e) provides that an adverse party may not simply rely upon mere allegations in the pleadings, but must set forth in an affidavit specific facts showing there is a genuine issue for trial. *Rhodehouse*, 125 Idaho at 211, 868 P.2d at 1227. Further, the affidavits either supporting or opposing the motion must set forth facts that would be admissible in evidence and show that the affiant is competent to testify. *Id.;* I.R.C.P. 56(e).

## IV.

### ANALYSIS

**A. The District Court Correctly Granted Summary Judgment In Ruling That Dr. Borup's Testimony Lacked Sufficient Familiarity With The Optometry Standard Of Care.**

The medical malpractice statutes at issue in this case are Idaho Code sections 6–1012 and 6–1013. I.C. § 6–1012 provides that the community standard of health care in a medical malpractice case must be established by expert testimony. The explicit language of I.C. § 6–1012 makes clear that a health care provider must be compared to a health care provider with similar training and in the same category or class, "taking into account his or her training, experience, and fields of medical specialization." I.C. § 6–1013 provides, *inter alia*, that the expert witness must testify that he or she possesses professional knowledge and expertise as well as actual knowledge of the applicable community standard of care to which his or her opinion is addressed.

Dr. Borup's affidavit, submitted in opposition to Dr. Griswold's motion for summary judgment, stated that the standard of care during the time period in question relative to the use of pharmaceutical agents for therapeutic use was the same for ophthalmologists and optometrists who prescribed pharmaceutical agents for therapeutic use. Dr. Borup further opined that Dr. Griswold failed to meet that standard of care in that he should have recognized Evans was experiencing a toxic reaction to the medication he had prescribed.

Evans argues on appeal that if optometrists are licensed to prescribe pharmaceutical agents pursuant to I.C. § 54–1501, as are ophthalmologists, then optometrists should be held to the same standard of care as ophthalmologists when prescribing medication. This argument ignores the requirements of I.C. §§ 6–1012 and 6–1013.

■ Dr. Borup, an ophthalmologist, is a medical practitioner of a different class than an optometrist. An ophthalmologist is a physician; an optometrist is not. Therefore, in order for Dr. Borup's testimony to withstand summary judgment under I.C. §§ 6–1012 and 6–1013, Dr. Borup must testify that he was familiar with the optometry standard of care applicable to the time period and locality in question and that Dr. Griswold did not meet it. This he did not do. In fact, in his deposition, Dr. Borup actually stated the opposite: that he was *not* familiar with the standard of care applicable to optometrists during the time and place in question, and that he had not attempted to familiarize himself with the standard through discussions with optometrists. Dr. Borup's affidavit and his deposition testimony demonstrate that he did not have knowledge of the local standard

**906**

of care of optometrists practicing in Boise, Idaho in October and November 1993.

In the present case, the testimony of Evans' expert witness, Dr. Borup, was insufficient to establish an issue of fact in this case, either through his affidavit or his deposition. Thus, we hold that the district court correctly ruled that Dr. Borup failed to demonstrate a sufficient familiarity with the applicable optometry standard of care to permit his opinions to be utilized in opposition to Dr. Griswold's motion for summary judgment. *See Rhodehouse v. Stutts,* 125 Idaho 208, 212, 868 P.2d 1224, 1228 (1994). By this holding, this Court does not rule on the issue of whether an optometrist is held to the same standard of care as an ophthalmologist when prescribing pharmaceutical agents to patients. Rather, we hold that because Dr. Borup expressed that he has no knowledge of the local standard of care of an optometrist, his testimony is insufficient to withstand summary judgment. Therefore, Evans cannot "affirmatively prove by direct expert testimony" that Dr. Griswold negligently failed to meet the standard of care for optometrists, in conformity with I.C. § 6–1012.

**B. Dr. Griswold is not entitled to attorney fees on appeal.**

■ Dr. Griswold argues that he is entitled to attorneys fees pursuant to I.C. § 12–121. We decline to award fees in this case as we are not "left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979).

### V.

### CONCLUSION

We hold that the affidavit and deposition testimony of Dr. Borup is insufficient to comply with either I.C. §§ 6–1012 or 6–1013 since Dr. Borup professed to have no knowledge of the community standard of care with respect to the practice of optometry, the particular specialty of health care involved in this case.

Accordingly, the district court's order of summary judgment is affirmed.

No attorney fees on appeal. Costs on appeal to respondent.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.