Charles W. HOLLINGSWORTH and
Emma Hollingsworth, husband
and wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 94–0242–S.

United States District Court,
D. Idaho.

Jan. 17, 1996.

Kenneth L. Pedersen, Webb Burton Carlson Pedersen & Webb, Twin Falls, ID, for plaintiffs.

Deborah A. Hill, U.S. Attorney's Office, Boise, ID, for defendant.

## MEMORANDUM DECISION AND ORDER

WINMILL, District Judge.

### INTRODUCTION

The Court has before it the Government's Motion for Summary Judgment (Docket No. 31). The Court heard oral argument on the Motion on January 11, 1996, and the Motion is now at issue. The Court indicated to counsel at the conclusion of oral argument that the Court wanted to read the entire deposition of Dr. Breitman and review his affidavit. The Court has now conducted that review and is prepared to resolve the Motion.

### ANALYSIS

In this medical malpractice action, the Defendant United States seeks to exclude the testimony of Plaintiffs' medical expert, Dr. Les Breitman, on the ground that he is unqualified to render an opinion on the standard of care. The Government asserts that if Dr. Breitman is precluded from testifying, this suit must be dismissed since Idaho Code §§ 6–1012 and 6–1013 require an expert's testimony.

precludes a finding of trademark infringement and that Plaintiff has failed to proffer evidence of actual confusion in this case. Defendant's first argument is without legal merit. *See Van Dyne–*

*Crotty,* 926 F.2d at 1159. The second argument is unrelated to any issue presently before the Court.

It is undisputed that Idaho law is applicable and requires the testimony of a medical expert. The sole issue is whether Dr. Breitman is qualified to render an opinion on the standard of care in this particular case. To resolve this issue, the Court must first examine the issues in this case, and then determine whether Dr. Breitman is qualified to speak to those issues.

In December, 1991, Plaintiff Charles Hollingsworth underwent surgery at the Veterans Administration Medical Center in Boise to repair an abdominal aortic aneurysm. Hollingsworth claims that malpractice by Government physicians during and after that surgery caused him brain damage leading to decreased mental capacity and blindness in one eye.

Hollingsworth retained Dr. Breitman to render an expert opinion on whether the Government physicians complied with the applicable standard of care. After reviewing the records, Dr. Breitman concluded that the Government was negligent. Dr. Breitman agreed with the Government's own expert that the applicable standard of care was a national standard rather than a local standard. Dr. Breitman found eight specific areas where the Government physicians departed from this national standard of care.

In response to the Government's Motion for Summary Judgment, Dr. Breitman filed his affidavit setting forth the eight areas where the Government physicians

"were negligent and breached the standard of care by:

A. Failing to insure that, prior to using it during the surgery, the recycling system required for the autotransfusion of the patient's blood was in proper working order.

B. Failing to seek the opinions and consultations of appropriate specialists upon the determination that Charles Hollingsworth's blood had hemolyzed as a result of excess pressure from the recycling system, and failing to institute on a timely basis the proper emergent care of the patient when the hemolysis was discovered during surgery.

C. Failure to properly monitor the patient's condition in the post-operative period, specifically failure to sufficiently monitor his arterial blood gases in order to determine the effect of the hemolysis on his ability to oxygenate tissues.

D. Attempting to extubate the patient from the respirator without an appropriate evaluation of the patient's respiratory status and his arterial blood gases.

E. Taking the patient off the respirator too early in view of his general condition and in view of the fact that he had so recently suffered a major hemolytic event.

F. Concealing the fact that a major hemolytic event occurred during surgery, avoiding it entirely in the Operative Note, and stating in the Discharge Summary that the gross hemoglobinuria occurred over the several days succeeding the surgery, when in fact the major hemolytic event (and gross hemoglobinuria) occurred during the surgery itself. Further, although the doctor stated that the patient did well immediately postoperatively, the facts are that the patient did not do well at that time, was not properly tested to determine his status, and no hematology consultation was arranged to determine his status and the proper course for his management.

G. Concealing the fact that the patient suffered a cardio-pulmonary arrest, as well as the fact that the patient complained of blindness in one eye after these events, but before he was discharged."

*See,* Affidavit of Breitman at pp. 3–4 (Docket No. 41).

During oral argument, counsel for Plaintiff stated that the only issue in this case was whether the Plaintiff was taken off the respirator improperly. This created some confusion, because Plaintiffs' counsel had submitted the affidavit of Dr. Breitman in support of the assertion that *during surgery* the Government physicians were negligent for failing to realize that the blood recycling system was working improperly. Counsel's statement during oral argument appeared to

waive some of the eight areas of negligence discussed by Dr. Breitman in his affidavit.

This confusion was cleared up at the end of oral argument when the Court asked Plaintiffs' counsel to identify which of the eight areas Plaintiff was waiving. Plaintiff's counsel declined to waive any. The Court shall therefore conclude that Plaintiff intends to offer Dr. Breitman's expert testimony on all eight areas set out in his affidavit.

The issue then is whether Dr. Breitman is qualified to testify to those eight areas of negligence. The standard for qualification is set forth in I.C. § 6–1013 which requires that the expert possess "professional knowledge and expertise coupled with actual knowledge of the applicable ... community standard to which his or her expert opinion is addressed...."

█ The Idaho case law has interpreted this statutory language to allow a Plaintiffs' expert to adopt the testimony of a Defense expert that the applicable standard of care is a national, rather than a local, standard. *See, Kozlowski v. Rush,* 121 Idaho 825, 828 P.2d 854 (1992). The case law has added the further gloss that the expert need not be board certified, *Pearson v. Parsons,* 114 Idaho 334, 757 P.2d 197 (1988), and need not practice in the same specialty as the Defendant physicians. *Clarke v. Prenger,* 114 Idaho 766, 760 P.2d 1182 (1988).

When this case law is examined, it is apparent that the experts approved under I.C. § 6–1013 have a combination of learning and actual experience. Thus, in *Clarke v. Prenger, supra,* the expert was an obstetrician-gynecologist testifying about the improper placement of an IUD. In *Watts v. Lynn,* 125 Idaho 341, 870 P.2d 1300 (1994), the expert was an endodontist testifying about root canal procedures. In *Pearson v. Parsons, supra,* the expert was a practicing family physician testifying about a failure to diagnose appendicitis in a three-year-old girl.

This reading of the cases accords with the language of I.C. § 6–1013 which requires that the expert have not only "knowledge," but also "expertise." This Court must give both of these terms their full meaning, and must assume that the Idaho Legislature used both terms for a reason. *See, Pettis ex. rel. U.S. v. Morrison–Knudsen Co., Inc.,* 577 F.2d 668 (9th Cir.1978) (construing Idaho law); *Sweitzer v. Dean,* 118 Idaho 568, 798 P.2d 27 (1990). When the two terms are read together with their common definitions in mind, they mean that an expert must possess a combination of learning and experience.

Certainly the expert need not have direct experience in the very specialty at issue in the malpractice action. But even Plaintiffs' counsel conceded at oral argument that a dermatologist without surgical experience could not testify about a complicated brain surgery technique. Certainly the dermatologist could obtain vast "knowledge" by studying texts on brain surgery, but to allow him to testify would be to ignore the companion requirement that he possess "expertise." That term requires at least some analogous experience in a related field that the expert can draw upon in examining this case.

Plaintiffs' counsel posed a hypothetical where the Plaintiff suffered an infection because her surgeons forgot to wash their hands. Plaintiff's counsel asserted that even though the hypothetical was a surgical malpractice case, any doctor—even a dermatologist—should be able to testify that a doctor should scrub before surgery. The Court agrees. There are malpractice cases where the issues are so universal that any doctor could easily display both the "knowledge" and "expertise" essential to I.C. § 6–1013. The dermatologist may never have scrubbed for surgery, but he certainly has to maintain a clean environment while examining the skin of his patients. His "expertise" gained through related experiences would qualify him under the statute.

█ Dr. Breitman assets that the malpractice claims in this case "involve routine and commonplace procedures .that all doctors across the country are trained to understand." *See,* Affidavit of Breitman at p. 3, ¶ 11 (Docket No. 41). Dr. Breitman renders opinions on the use of a blood recycling system during surgery; the need to monitor blood gases after surgery; and the proper techniques for removing a patient from a respirator.

The Court has no doubt that Dr. Breitman could read up on these procedures and gain "knowledge" of them. But the statute also requires "expertise." What expertise has Dr. Breitman developed in these areas or in related procedures?

Dr. Breitman practiced medicine from about 1965 to 1977. *See,* Exhibit A to Affidavit of Breitman (Docket No. 41). He had an office practice in gynecology, devoting about 80% of his time to birth control matters. *See,* Deposition of Breitman at p. 30. His surgical experience is minor, and he never held surgical privileges at any hospital. *Id.* at p. 33, 11.8–15. He testified that less than 1% of his practice involved monitoring patients in an intensive care unit. *Id.* at p. 114, ll. 7–10. He testified that he has removed a patient from a respirator "only once," although he goes on to indicate he may have done it more than that. *Id.* at p. 120, ll. 11–13. He has never used the blood recycling system used in this case. *Id.* at p. 108–109. Dr. Breitman states that after retiring from the practice of medicine in 1977, "I have since devoted myself to working as a medical-legal consultant." *See,* Exhibit A to Affidavit of Breitman (Docket No. 41).

Dr. Breitman renders an opinion on the blood recycling system, but has no personal experience with that machine or any related equipment. He testifies about decisions made in intensive care, an area that comprised less than 1% of his 12 years of practice that ended over 18 years ago. And finally, he is prepared to critique decisions made about removing a patient from a respirator despite his very limited personal experience.

Put simply, Dr. Breitman has developed no "expertise" in the procedures he examines. He therefore cannot qualify as an expert witness under I.C. § 6–1013.[1] This does not mean, however, that the case must be dismissed. Although discovery is closed, and trial is set for April 22, 1996, the Court finds that in the interests of justice, discovery should be reopened for the purpose of allowing Plaintiffs to find a new expert. The Court will require that Plaintiffs locate a new expert and provide the Government with the report contemplated by Federal Rule of Civil Procedure 26(a)(2)(B) on or before March 1, 1996, and thereafter make the expert available for deposition prior to the trial date of April 22, 1996.[2]

Because the Court is excluding the expert testimony of Dr. Breitman, but not dismissing the case, the Court is essentially granting in part and denying in part the Government's Motion for Summary Judgment. The Court's denial of that portion of the Government's Motion seeking dismissal of the case is without prejudice to the Government's right to file a second Motion for Summary Judgment if the Plaintiffs fail to meet the deadline for submitting a new expert's report, or if the new expert is named but fails to qualify under I.C. § 6–1013. That is a matter on which the Court expresses no opinion.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED, that the Government's Motion for Summary Judgment is hereby GRANTED IN PART AND DENIED IN PART in accordance with the Memorandum Decision accompanying this Order. The Motion is DENIED to the extent that it seeks dismissal of this case, but is GRANTED to the extent that it seeks to exclude the testimony of Dr. Les Breitman under I.C. § 6–1013.

---

1. In the Briefing, and during oral argument, Government counsel brought up a number of improper arguments. The clothing that Dr. Breitman wore to his Clinic is irrelevant; the "outrage" of Government physicians at Dr. Breitman's testimony is likewise irrelevant and not supported by the Record. The Court, in reaching this decision, disregards such improper arguments. Counsel for the Government is cautioned to avoid such arguments in the future.

2. Because Plaintiffs' failure to retain a properly qualified expert has created the need for this reopening of discovery, the Court is not inclined to consider a request from the Plaintiffs for further time to retain another expert or for a continuance of the scheduled trial date. However, if the Plaintiff's late designation of its expert witness results in actual prejudice to the Government and prevents it from adequately preparing for trial, the Court will consider such a request from the Government.

IT IS FURTHER ORDERED, that discovery shall be reopened for the limited purpose of allowing Plaintiffs the opportunity to obtain a new expert witness, and to allow discovery of that expert witness. Discovery shall not be reopened for any other purpose.

IT IS FURTHER ORDERED, that the Plaintiffs shall obtain a new expert witness and file the report contemplated by Federal Rule of Civil Procedure 26(a)(2)(B) on or before **March 1, 1996** and have the expert available for deposition before the trial date of **April 22, 1996.**