# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47946

| | | |
|---|---|---|
| MICHAEL SUMMERFIELD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, June 2021 Term |
| | ) | |
| v. | ) | Opinion filed: August 31, 2021 |
| | ) | |
| ST. LUKE'S McCALL, LTD., | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendants-Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN/JANE DOES I-X, whose true identities | ) | |
| are presently unknown, | ) | |
| | ) | |
| Defendants. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Valley County. Jason D. Scott, District Judge.

The decision of the district court is affirmed in part, reversed in part, and remanded.

Johnson & Monteleone, LLP, Boise, for Appellant. Jason Monteleone argued.

Brassey Crawford, Boise, for Respondents. Andrew Brassey argued.

_____

MOELLER, Justice.

Michael Summerfield brought a medical malpractice suit against St. Luke's McCall, Ltd. (St. Luke's), following the surgical removal of his gallbladder. During surgery, the attending surgeon, who was employed by St. Luke's, unknowingly spilled and left a gallstone in Summerfield's peritoneal cavity. When it was later determined that the gallstone was not in the removed gallbladder, the surgeon failed to inform Summerfield of the incident, warn him of any potential complications, or properly document the incident in his medical records.

St. Luke's moved for summary judgment, challenging the admissibility of the opinions offered by Summerfield's expert witness. St. Luke's asserted that Summerfield's expert, as an

emergency medicine and wound care physician, was unable to establish the requisite knowledge of the applicable standards of care and breaches thereof by St. Luke's and the attending surgeon. The district court initially agreed with St. Luke's and granted its motion for summary judgment. Summerfield then filed a motion for reconsideration and attached a supplemental declaration from his expert witness that established the requisite foundation. The district court considered this additional evidence and granted Summerfield's motion. However, the district court later reversed itself, relying on *Ciccarello v. Davies*, 166 Idaho 153, 456 P.3d 519 (2019), which held that a trial court is afforded discretion in determining whether to consider new declarations accompanying a motion for reconsideration if they were untimely for consideration at summary judgment. Summerfield appealed to this Court and contends the district court's *sua sponte* reversal of itself was in error and contrary to previous decisions issued by this Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Michael Summerfield had a large gallstone in his gallbladder. On August 31, 2015, Dr. Amy Ocmand, an employee of St. Luke's, performed a laparoscopic cholecystectomy to remove Summerfield's gallbladder. Following the procedure, Dr. Ocmand sent the removed gallbladder off for examination, but no gallstone was found. Unknown to Dr. Ocmand, the gallstone had spilled out of the gallbladder during surgery and was left inside Summerfield's peritoneal cavity. After learning that the gallstone had been left inside Summerfield, Dr. Ocmand chose not to inform him of that fact. Dr. Ocmand also did not make any notation in Summerfield's medical chart to reflect the retained stone. Summerfield saw Dr. Ocmand two more times on September 15, 2015, and December 2, 2015, and Dr. Ocmand did not inform him of the missing gallstone.

The retained gallstone unknowingly began to cause health problems for Summerfield. From January of 2016 through March of 2016, Summerfield saw Dr. Ostermiller for right flank pain and shoulder pain. Summerfield underwent a urinalysis, an ultrasound of his kidney, and acupuncture to relieve the pain. In April of 2016, Summerfield received medical care for a cough, fever, and congestion. In June of 2016, he received more medical care for a cough, achiness, and a fever. Summerfield also had an unexplained weight loss of six pounds. The following month Summerfield saw Dr. Ostermiller again with a cough, right lower back pain, and upper quadrant abdominal pain. Summerfield had lost an additional 12 pounds from the previous month. Dr. Ostermiller noted a large mass on Summerfield's right flank. The doctor speculated that it could be cancer. Summerfield underwent a CT scan of the chest, abdomen, and

pelvis. The CT scan revealed a "multiloculated peripherally enhancing fluid collection involving the right posterior flank and retroperitoneal space." Summerfield was referred to a surgeon who opined that it was a "chronic intraabdominal abscess with a retained gallstone." In late July, Summerfield underwent surgery to drain the abscess and remove the gallstone. However, "the gallstone was so invested in vital structures by then that it could not be safely removed." Initially, the abscess improved; but then it required additional drainage the following month. The abscess recurred again in September of 2016. Finally, the abscess was able to be drained and the gallstone removed in an additional surgery. The final surgery required lengthy use of a wound vacuum to close the large "defect" that was left.

Summerfield brought suit against St. Luke's on a *respondeat superior* theory. Summerfield alleged that Dr. Ocmand, an employee of St. Luke's, negligently failed to (1) notice the spilled gallstone during surgery, (2) retrieve it, (3) inform him of the spilled gallstone or potential health complications, (4) conduct imaging afterward to identify the spilled gallstone's location, and (5) make a notation of the spilled gallstone on his medical chart.

Pursuant to discovery, Summerfield disclosed Dr. Julie Madsen as his expert witness. Summerfield's disclosure stated that Dr. Madsen was familiar with the standard of care because she had been "practicing medicine at St. Luke's at the time relevant to this action" and "was actively engaged in the practice of medicine in both Boise and McCall in August 2015 and September 2015."

Trial was scheduled for November 19, 2019, and the deadline for Summerfield's expert witness disclosure was set for June 24, 2019. On June 26, 2019, two days after the deadline, Summerfield disclosed Dr. Madsen as his sole expert witness, and attached her *curriculum vitae* and a report summarizing her findings. Dr. Madsen is board-certified in emergency medicine and has practiced in wound care for the previous eight years. Dr. Madsen's experience did not include the performance of any laparoscopic cholecystectomies. While Dr. Madsen's report referenced what is expected of general surgeons, it failed to state the particular standard of care when it comes to board-certified surgeons performing laparoscopic cholecystectomies. Additionally, Dr. Madsen did not detail any inquiries she conducted of other physicians who perform laparoscopic cholecystectomies.

St. Luke's filed a motion for summary judgment asserting that Summerfield could not establish a foundation for his claim because Dr. Madsen was not familiar with the standard of

3

care required of general surgeons who perform laparoscopic cholecystectomies. Summerfield responded by filing an affidavit from Dr. Madsen in an attempt to address St. Luke's contentions (the "first affidavit"). Dr. Madsen expanded on her experience with laparoscopic cholecystectomies by stating that as an Emergency Medicine Physician-Specialist, she routinely evaluates patients with gallbladder disease and refers them to surgery. Further, she regularly manages complications of gallbladder surgery, including wound infection, retained or spilled gallstones, and other related complications. Dr. Madsen listed many surgical standards in her affidavit that applied to laparoscopic cholecystectomies but most were very broad surgical standards, such as "obtain informed consent from the patient." Again, Dr. Madsen did not detail any inquiries she conducted of other physicians who perform laparoscopic cholecystectomies.

After the district court heard argument on St. Luke's motion for summary judgment, it granted Summerfield leave to submit a supplemental affidavit regarding the names of the surgeons with whom Dr. Madsen had spoken in order to familiarize herself with the applicable standard of care. The district court also requested the publication of the American College of Surgeons to which Dr. Madsen had cited when listing the surgical standards in her prior affidavit.

Dr. Madsen's supplemental affidavit (the "second affidavit") provided the publication for her list of surgical standards. The second affidavit also detailed her discussion with two general surgeons from Wyoming who had worked at St. Luke's on a *locum tenens*[1] basis. Dr. Madsen stated, "in discussing the details of performing general surgery at St. Luke's McCall in 2015, these two *locum tenens* physicians . . . verified for me that the [standards of care] that applied to them were the same as the national [standards of care]." This discussion, however, occurred in late 2014 or into the middle of 2015, predating Summerfield's surgery on August 31, 2015, and his post-operative complications. Dr. Madsen went on to further detail a conversation with other physicians:

> Specifically, I spoke to Jon Getz, M.D., and Johnny Green, M.D., who are Boise-based general, abdominal surgeons, relative to the [standards of care] applicable to general, abdominal surgeons in McCall, Idaho, also in the late 2014 or into the middle of 2015 time frame. Both Drs. Getz and Green confirmed for me that my understanding of the [standards of care] applicable in this case regarding Mr. Summerfield was, in fact, correct and accurate and also that the national [standards of care] controlled.

---

[1] A doctor taking the place of another or temporarily filling an open position.

4

Dr. Madsen's second affidavit also alleged that Dr. Ocmand violated the applicable standards of care when she failed to inform Summerfield of the spilled gallstone and by failing to make any notation concerning it in his medical chart.

The district court granted St. Luke's motion for summary judgment, finding that Dr. Madsen could not establish familiarity with the applicable standard of care to maintain Summerfield's action. The district court noted that, as a matter of law in a medical malpractice case, the plaintiff must offer expert testimony that the defendant negligently failed to meet the applicable standard of care. The expert witness's opinions and testimony must be supported by the following foundation:

> (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed[.]

I.C. § 6-1013.

Initially, the district court noted that Dr. Ocmand is a board-certified general surgeon and Dr. Madsen is not. The standard of care for board-certified specialists is the national standard of care. Because Dr. Madsen is not board-certified, the district court reasoned that she could not be presumed to know that standard. However, Dr. Madsen could still demonstrate her knowledge of the applicable standard of care through her experience or study of the specialty of the defendant physician. Nevertheless, the district court determined she also failed to meet this burden. Dr. Madsen described her experience as managing complications of gallbladder surgery, evaluating patients with gallbladder disease, and referring patients for laparoscopic cholecystectomies. Her experience never described actually *performing* laparoscopic cholecystectomies.

The district court found that Dr. Madsen's affidavits only referenced general knowledge of what is expected of general surgeons, not particular knowledge of board-certified physicians performing laparoscopic cholecystectomies. Additionally, Dr. Madsen did not perform any pertinent inquiries of other physicians. For example, she spoke with two unidentified surgeons from Wyoming who told her the national standard of care applies to general surgeons. She also spoke with two general surgeons who practice in Boise, Dr. Getz and Dr. Green, who told her the same information. Dr. Madsen alleged she had specific conversations with Dr. Getz and Dr. Green that "confirmed for me that my understanding of the [standards of care] applicable in this

case regarding Mr. Summerfield, was, in fact, correct and accurate." However, she spoke to them well before Summerfield's post-operative complications began. The district court remained unconvinced: "[l]eft unsaid is precisely what 'understanding' of Dr. Madsen's was 'confirmed' by Drs. Getz and Green. That's one reason Dr. Madsen's description of these conversations isn't convincing evidence that she learned from them the standard of care applicable to general surgeons in connection with laparoscopic cholecystectomies."

The district court further noted that Dr. Madsen failed to demonstrate her knowledge of the applicable standard of care through study of authoritative texts or articles.[2] Even though Dr. Madsen listed the surgical standards from the American College of Surgeons' website, the website specifically qualified that the list "does not constitute a standard of care." The district court concluded: "Relying on a statement that expressly disclaims being a standard of care to try to demonstrate knowledge of the standard of care suggests Dr. Madsen doesn't know where to look to learn the standard of care."

In sum, the district court held that Dr. Madsen did not show knowledge of the applicable standards of care, either through her professional experience or study. Without such knowledge, the district court reasoned that there was no foundation for Dr. Madsen's opinions regarding Dr. Ocmand's alleged breaches of those standards. Therefore, the district court could not consider Dr. Madsen's opinion at summary judgment and Summerfield otherwise had no evidence to establish any breach of the applicable standards of care.

Summerfield then filed a motion for reconsideration of the district court's decision on summary judgment and attached a third affidavit from Dr. Madsen (the "third affidavit"). Summerfield argued that Dr. Madsen's third affidavit clearly demonstrates that she has knowledge and is familiar with the applicable standards of care. Dr. Madsen's third affidavit stated that ten days after the entry of judgment dismissing Summerfield's case on summary judgment, she called Dr. Matthew Macha—a Boise general surgeon who performs laparoscopic cholecystectomies—to discuss the standard of care for laparoscopic cholecystectomies. Although the district court stated, "before this conversation, Dr. Madsen hadn't—according to the record in this case—made a bona fide effort to learn the applicable standard of care for laparoscopic cholecystectomies from someone with knowledge of it," it decided to consider Dr. Madsen's

---

[2] The district court noted that Dr. Madsen did additional reading to try to learn the applicable standard of care and then cited several articles on spilled gallstones. Nevertheless, these articles were not part of the record in front of the district court and their content was unclear to the district court, so they were not considered.

6

third affidavit. The district court noted that Dr. Madsen's third affidavit supplied the foundation that was missing when summary judgment was granted. St. Luke's contended that the district court should not consider the late affidavit; the district court disregarded St. Luke's assertions and considered Dr. Madsen's third affidavit, recognizing that "case law dictates considering new evidence in connection with Rule 11.2(b) motions."

As the district court later noted, at the time it made this ruling it was under the impression that it *must* consider new evidence on a motion for reconsideration. Accordingly, upon consideration of Dr. Madsen's third affidavit, the district court granted Summerfield's motion for reconsideration and vacated the prior order granting summary judgment to St. Luke's. However, the district court ordered a monetary sanction against Summerfield for the late filing in lieu of excluding Dr. Madsen's third affidavit.

Then, 28 days later, the district court *sua sponte* rescinded its order granting Summerfield's motion for reconsideration and reinstated judgment in favor of St. Luke's. The district court explained its reasons for reversing itself:

> [T]he [district court's] choice of sanction was influenced by case law requiring the trial courts to consider new evidence submitted with a motion to reconsider. . . . That case law seemed to put the Idaho Supreme Court's thumb on the scale in favor of considering new evidence, despite the movant's failure to submit the evidence when the movant should've submitted it. . . . That perception contributed to the [district court's] decision to elevate—above the fairness and judicial-economy concerns involved in letting the movant escape the natural consequences of missed deadlines—the aim of an adjudication made on the fullest factual record.

The district court further noted that it did not take notice of this Court's recent decision in *Ciccarello v. Davies*, 166 Idaho 153, 456 P.3d 519 (2019), before making its initial decision.[3] In *Ciccarello*, this Court held that a district court did not abuse its discretion in refusing to consider new evidence on reconsideration when the declarations were untimely for consideration at summary judgment, thereby clarifying the case law on a lower court's obligation to consider new evidence submitted with a motion for reconsideration:

> While this Court has explained that when considering a motion for reconsideration the trial court should take into account any new facts presented by the moving party that bear on the correctness of the order, this rule was not designed to allow parties to bypass timing rules or fail to conduct due diligence

---

[3] *Cicarrello* was decided after the parties briefed the issue but before the district court's order granting Summerfield's motion for reconsideration.

7

prior to a court's ruling. Rather, the purpose of a motion for reconsideration is to reexamine the correctness of an order.

166 Idaho at 162, 456 P.3d at 528 (internal citations, quotation marks, and brackets omitted). The district court stated that had it been aware of *Ciccarello*, it would have made a different decision.

The district court then reversed itself, reasoning:

Reevaluating the issues in light of *Ciccarello*, the [district court] no longer considers forgiving Summerfield's missed deadlines and considering Dr. Madsen's third affidavit to be the best exercise of its discretion. Instead, the best exercise of the [district court's] discretion is to decline to consider that affidavit. It was submitted after Summerfield's deadline for filing opposition papers on summary judgment, and it evidences a post-judgment effort to render Dr. Madsen qualified to render her opinions on the applicable standard of care, when that effort should've occurred much earlier—by the time of Summerfield's expert disclosures and, if not then, not later than when his opposition papers came due. . . . Alternatively, the [district court] simply declines to consider that affidavit, as *Ciccarello* allows, because it wasn't filed within the time allowed by I.R.C.P. 56(b)(2) and there is no good excuse for Summerfield's failure to develop and present the necessary foundation for Dr. Madsen's opinions until after a decision was rendered on summary judgment.

Summerfield timely appealed the district court's order on summary judgment and the district court's order reinstating judgment for St. Luke's.

## II. STANDARD OF REVIEW

"This Court exercises de novo review of a grant of summary judgment and the 'standard of review is the same as the standard used by the trial court in ruling on the motion for summary judgment.' " *AED, Inc. v. KDC Invest, LLC,* 155 Idaho 159, 163, 307 P.3d 176, 180 (2013) (quoting *Stonebrook Const., LLC v. Chase Home Fin., LLC,* 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A material fact exists when a reasonable jury could return a verdict for the non-moving party based on the evidence presented. *Marek v. Hecla, Ltd.,* 161 Idaho 211, 220, 384 P.3d 975, 984 (2016). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robinson v. Bateman-Hall, Inc.,* 139 Idaho 207, 209, 76 P.3d 951, 953, (2003).

"The admissibility of expert testimony, however, is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary

8

judgment." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012) (internal citation omitted). The "liberal construction and reasonable inferences standard does not apply" when determining the admissibility of expert testimony; instead, "the trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible." *Mattox v. Life Care Ctrs. of Am., Inc.,* 157 Idaho 468, 473, 337 P.3d 627, 632 (2014).

This Court reviews a district court's decision on a motion for reconsideration using the same standard of review the lower court used when deciding the motion. *Monitor Finance, L.C. v. Wildlife Ridge Estates, LLC*, 164 Idaho 555, 433 P.3d 183 (2019). When this Court reviews a trial court's discretionary decision, it applies a four-prong test to determine whether there was an abuse of discretion: whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choice available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018).

### III. ANALYSIS

**A. The district court's decision to grant summary judgment to St. Luke's is affirmed in part and reversed in part.**

Summerfield contends that the district court erred in granting St. Luke's motion for summary judgment based on its finding Dr. Madsen failed to lay a proper foundation to testify to the applicable standard of care and the breaches thereof by Dr. Ocmand. Summerfield asserts that Dr. Madsen's second affidavit laid a sufficient foundation to testify that Dr. Ocmand breached the applicable standard of care by: (1) failing to notice and retrieve the spilled gallstone; (2) failing to inform Summerfield of the spilled gallstone; and, (3) failing to make a notation in Summerfield's medical record of the spilled gallstone. We agree in part and conclude Dr. Madsen, through her education, training, and practice at St. Luke's, as set forth in the first and second affidavits, could offer an expert opinion regarding the latter two alleged breaches of care: the failure to inform and the failure to note the incident in Summerfield's medical records. Therefore, the district court erred when it granted summary judgment for St. Luke's and dismissed Summerfield's case entirely.

1. *Establishing the applicable standard of care.*

9

Idaho Code section 6-1012 requires that a plaintiff who brings a medical malpractice claim must provide expert testimony establishing that the healthcare provider did not meet the applicable standard of healthcare practice. *Fisk v. McDonald*, 167 Idaho 870, 880, 477 P.3d 924, 934 (2020). Idaho Code section 6-1012 provides in part:

> In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including . . . any . . . nurse practitioner, registered nurse, . . . hospital, . . . or any person vicariously liable for the negligence of them . . . such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence . . . with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning.

I.C. § 6-1012.

An expert must have actual knowledge of the community standard of care at the time and place of the alleged malpractice in order to testify. *Fisk*, 167 Idaho at 880, 477 P.3d at 934. The expert can demonstrate knowledge of the community standard of care provided by Idaho Code section 6-1013:

> The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefore is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

I.C. § 6-1013. The district court's holding below focused on the third requirement—that Dr. Madsen did not possess the actual knowledge of the applicable community standard of care.

Dr. Madsen can establish that she has "actual knowledge" of the applicable standard of care under Idaho Code section 6-1013 by being a "provider[] of the same class in the same community, taking into account [the defendant provider's] training, experience, and fields of

medical specialization." I.C. § 6-1012. In the alternative, Dr. Madsen can " 'demonstrate a knowledge acquired from *experience or study* of the standards of the specialty of the defendant physician sufficient to enable [her] to give an expert opinion as to the conformity of the defendant's conduct to those particular standards.' " *Dulaney v. St. Alphonsus Reg'l Med. Ctr.,* 137 Idaho 160, 168, 45 P.3d 816, 824 (2002) (emphasis added) (quoting *Clarke v. Prenger*, 114 Idaho 766, 769, 760 P.2d 1182, 1185 (1988)).

> ### 2. *Dr. Madsen did not establish a foundation to give expert testimony regarding whether, under the applicable standard of care, Dr. Ocmand should have noticed and retrieved the spilled gallstone during the surgery.*

Regarding the first alleged breach of a standard of care, Dr. Madsen's first and second affidavits did not sufficiently establish a foundation to give expert testimony concerning whether Dr. Ocmand should have noticed the spilled gallstone and retrieved it. Dr. Madsen is not a provider of the "same class in the same community" when considering Dr. Ocmand's specializations. Dr. Ocmand is a board-certified general surgeon. Dr. Madsen is not. "For board-certified specialists, the local standard of care is equivalent to the national standard of care." *Samples v. Hanson*, 161 Idaho 179, 184, 384 P.3d 943, 948 (quoting *Buck v. St. Clair*, 108 Idaho 743, 745, 702 P.2d 781, 783 (1985)). Dr. Madsen's experience is in emergency medicine and in wound care. Her affidavits failed to describe any experience relating to laparoscopic cholecystectomies—she had never witnessed the procedure, nor has she performed one. In addition, Dr. Madsen did not describe any experience dealing with spilled gallstones or retrieving spilled gallstones during a laparoscopic cholecystectomy. She detailed her experience as *evaluating* patients with gallbladder disease, *referring* them for surgery, and *managing* post-operative wound infections from gallbladder surgery. Her experience as a physician did not include Dr. Ocmand's specializations as a board-certified general surgeon who regularly performs laparoscopic cholecystectomies. Therefore, we affirm the district court's conclusion that Dr. Madsen is not a "provider[] of the same class in the same community, taking into account [the defendant provider's] training, experience, and fields of medical specialization" in order for her to give expert testimony relating to the complications of a spilled or retained gallstone during a laparoscopic cholecystectomy. I.C. § 6-1012.

Additionally, we also affirm the district court's conclusion that Dr. Madsen failed to " 'demonstrate a knowledge acquired from *experience or study*' " of the applicable standard of care. *Dulaney,* 137 Idaho at 168, 45 P.3d at 824 (emphasis added) (quoting *Clarke*, 114 Idaho at

11

769, 760 P.2d at 1185). In her expert disclosure, Dr. Madsen merely referenced the care expected of general surgeons; she failed to come close to stating the *particular* standard of care when it comes to board-certified surgeons performing laparoscopic cholecystectomies. In her first affidavit filed in response to St. Luke's motion for summary judgment, Dr. Madsen listed surgical standards obtained from the American College of Surgeons' website. However, upon closer examination, the district court noted that the website clearly stated the surgical standards "do[] not constitute a standard of care."

In her second affidavit, Dr. Madsen stated that she had a discussion with two general surgeons from Wyoming who worked at St. Luke's McCall on a *locum tenens* basis. During that discussion, Dr. Madsen claimed "these two . . . physicians . . . verified for me that the [standards of care] that applied to them were the same as the national [standards of care]." However, she still failed to detail *what* the standards of care are. Furthermore, by Dr. Madsen's own admission, this discussion occurred in late 2014 or into the middle of 2015. Considering that Summerfield did not undergo gallbladder surgery until August 31, 2015, and his complications did not occur immediately after surgery, it would be impossible to presume that Dr. Madsen discussed this specific case—or even laparoscopic cholecystectomies generally—with the two Wyoming surgeons.

Dr. Madsen also stated that she had a discussion with two other doctors, Dr. Getz and Dr. Green, who are Boise-area abdominal surgeons. According to Dr. Madsen, they discussed the relative standards of care applicable to general abdominal surgeons. Even though Dr. Madsen declared that these doctors "confirmed for me that my understanding of the [standards of care] applicable in this case regarding Mr. Summerfield, was, in fact, correct and accurate," there is no indication that Dr. Madsen discussed laparoscopic cholecystectomies with them. As the district court properly noted, "[l]eft unsaid is precisely what 'understanding' of Dr. Madsen's was 'confirmed' by Drs. Getz and Green. That's one reason Dr. Madsen's description of these conversations isn't convincing evidence that she learned from them the standard of care applicable to general surgeons in connection with laparoscopic cholecystectomies." Dr. Madsen provided no foundation to provide an expert testimony regarding spilled or retained gallstones— whether physicians performing laparoscopic cholecystectomies should notice a spilled stone during surgery or whether a physician should attempt to retrieve a spilled stone. Accordingly, we conclude that the district court properly determined that Dr. Madsen did not demonstrate

12

knowledge of the applicable standard of care through professional experience or study. Therefore, her opinion lacked foundation and was inadmissible. Her testimony, on that basis, was correctly not considered by the district court. Without admissible expert testimony, Summerfield had no evidence to establish his first breach of care claim against Dr. Ocmand— that she should have noticed and retrieved the spilled gallstone. Thus, summary judgment on that ground was properly granted by the district court.

3. *Due to her training and experience, Dr. Madsen could offer an expert opinion on whether, under the applicable standard of care, Dr. Ocmand should have timely informed Summerfield of the spilled gallstone and whether Dr. Ocmand should have made a notation in Summerfield's medical chart regarding the spilled gallstone.*

Although we affirmed the district court as to the first alleged breach of the standard of care, we must reverse its ruling as it pertains to the remaining two alleged breaches of the standard of care: (1) Dr. Ocmand's failure to notify Summerfield of the spilled stone and (2) Dr. Ocmand's failure to make a notation in Summerfield's medical chart. The standard of care for these two claims are of such a general nature that Dr. Madsen was qualified to give an expert opinion on them.

Dr. Madsen is a physician with consulting privileges at St. Luke's. She had consulting privileges during Summerfield's surgery. Part of Dr. Madsen's work experience was to manage complications of gallbladder surgery, including spilled gallstones. Dr. Madsen's second affidavit clarified that as a board-certified emergency medicine physician, Dr. Madsen is knowledgeable and aware of the ethical obligation to disclose surgical errors and inform patients of potential harm of those errors. Furthermore, Dr. Madsen noted that St. Luke's By-Laws contain guidelines on error disclosure and set the standard of care for physicians at St. Luke's.

Dr. Madsen opined that Dr. Ocmand breached the applicable standard of care when the pathology report showed the absence of a gallstone, meaning the gallstone had been spilled and remained inside of Summerfield. At that point, Dr. Ocmand should have informed Summerfield of the retained stone, but she did not. Moreover, Dr. Ocmand should have made a notation in Summerfield's medical chart regarding the spilled stone; but she did not do this either. Dr. Madsen testified that during this time there was no difference at St. Luke's between how a surgeon reviews a pathology report and how physicians handle post-operative care. Dr. Madsen did not need to match the specific training and expertise of Dr. Ocmand in order to testify to these opinions; they are of such a general nature that Dr. Madsen's experience, board-

13

certification, and consulting privileges at the same facility are sufficient to meet the foundational requirements. As to these two claims, the district court erred by placing undue emphasis on Dr. Madsen's lack of experience in laparoscopic cholecystectomies. She did not need experience performing laparoscopic cholecystectomies in order to give an expert opinion that Summerfield should have been notified of the spilled gallstone and a notation should have been made in his medical chart. We conclude that Dr. Madsen demonstrated the requisite knowledge to offer these opinions. Therefore, the district court erred by granting summary judgment in favor of St. Luke's and the case is remanded for further proceedings.

**B. The district court did not abuse its discretion by rescinding its order granting Summerfield's motion for reconsideration and reinstating its order on summary judgment in favor of St. Luke's.**

Summerfield contends the district court erred by *sua sponte* rescinding its order on reconsideration and reinstating summary judgment for St. Luke's. Because we have reversed, in part, the district court's ruling on summary judgment as it pertained to the latter two alleged breaches of the standard of care, we will only address whether the district court erred by rescinding its order on Summerfield's motion for reconsideration as to the first alleged breach of the standard of care—failure to notice and remove the spilled gallstone.

Summerfield asserts the district court erred by solely relying on *Ciccarello* and ignoring this Court's opinions in *Fisk*, 167 Idaho 870, 477 P.3d 924, *Puckett v. Verska*, 144 Idaho 161, 158 P.3d 937 (2007), and *Shane v. Blair*, 139 Idaho 126, 75 P.3d 180 (2003). Regarding *Fisk*, Summerfield argues, "[t]his Court held that Idaho's trial courts have *no* discretion to decide whether to entertain a motion for [re]consideration and that they *must* consider any new admissible evidence or authority bearing on the correctness of its orders." (Emphasis added). In *Fisk*, the defendant was a board-certified neurological surgeon who performed an outpatient cervical spine fusion surgery on the plaintiff. 167 Idaho at 877, 477 P.3d at 931. The following day, before the plaintiff was released from the hospital, the plaintiff developed severe abdominal pain and began vomiting profusely. Her condition continued to worsen. Eventually, the plaintiff underwent an exploratory laparotomy, which led another doctor to discover that the plaintiff developed mesenteric artery ischemia—or a loss of blood supply to the small intestines. *Id.* at 877–78, 477 P.3d at 931–32. Doctors removed a significant amount of the plaintiff's small and large intestines. She recovered, but with serious ongoing repercussions. The plaintiff brought suit against the defendant and disclosed six retained expert witnesses. The defendant filed a motion

14

to strike the plaintiff's expert witness disclosures and a motion for summary judgment because the plaintiff failed to provide admissible evidence of the applicable standard of care or breach of that standard of care. *Id.* at 878, 477 P.3d at 32.

The district court granted the motion for summary judgment, finding none of the plaintiff's disclosed expert witnesses had "actual knowledge" of the applicable community standard of care. *Id.* The plaintiff filed a motion for reconsideration and provided additional declarations from her retained expert witnesses. *Id.* at 878-79, 477 P.3d 932-33. The motion was denied. The plaintiff appealed the district court's denial of her motion for reconsideration, among other alleged errors. *Id.* at 879, 477 P.3d at 933. When addressing the plaintiff's appeal of the district court's denial of reconsideration, this Court stated:

> The district court has no discretion to decide whether to entertain a motion for reconsideration. *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). In addition, the district court 'must consider any new admissible evidence or authority bearing on the correctness of [the] order.' *Jackson v. Crow*, 164 Idaho 806, 811, 436 P.3d 627, 632 (2019) (quoting *Fragnella*, 153 Idaho at 276, 281 P.3d at 113).

*Id*. at 892, 477 P.3d at 946.

*Fisk* is not quite on point with the case at hand because the district court in *Fisk* *considered* the plaintiff's additional expert declarations filed with the motion for reconsideration, but still denied the motion. The Court in *Fisk* was not asked to decide whether the district court should have considered the additional declarations but whether the district court's denial of the motion was proper. *Id.* In the case before us, the district court exercised its discretion and decided *not to consider* Summerfield's third affidavit from Dr. Madsen—and that is what Summerfield alleges was erroneous.

Similarly, *Puckett* does not support Summerfield's contention that a district court has no choice but to consider additional evidence submitted with a motion for reconsideration. In *Puckett*, this Court noted that a "decision to grant or deny a request for reconsideration rests in the sound discretion of the trial court." 144 Idaho at 166, 158 P.3d at 942. It further stated, "when reviewing a motion for reconsideration, the district court '*should* take into account any new facts presented by the moving party that bear on the correctness of the interlocutory order. The burden is on the moving party to bring the trial court's attention to the new facts.' " *Id.* (emphasis added) (quoting *Coeur d'Alene Mining Co. v. First Nat'l Bank*, 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990)). *Puckett* implies that consideration of additional evidence or facts

15

accompanying a motion for reconsideration rests with the discretion of the district court, rather than a mandatory obligation.

*Shane*, on the other hand, is a closer call. There, the plaintiff filed suit against a doctor the plaintiff alleged negligently breached the standard of care in operating on his spine. 139 Idaho at 127, 75 P.3d at 181. The defendant filed a motion for summary judgment, which the district court granted, finding the plaintiff did not establish that his expert witness had knowledge of the relevant standard of care. *Id.* at 128, 75 P.3d at 182. The plaintiff filed a motion for reconsideration and submitted a fourth affidavit from his expert witness and another expert witness. *Id.* The district court struck both supplemental affidavits and denied the motion for reconsideration. *Id.* On appeal, this Court held that the district court erred in striking the supplemental affidavits. *Id.* at 130, 75 P.3d at 184. However, the Court's analysis was rather short and did not state that the district court was required to consider the new affidavits, or that it abused its discretion by not considering them. *Id.* Moreover, *Shane*, the oldest of the cases cited by Summerfield, is less indicative of this Court's recent jurisprudence on this issue.

We find *Ciccarello* is directly on point here and reaffirm its holding. The district court had the discretion to refuse to consider Dr. Madsen's untimely third affidavit filed with Summerfield's motion for reconsideration. In *Ciccarello*, the plaintiff brought suit against his attorney for negligence and legal malpractice for his attorney's alleged defective drafting of a company sales contract that was adverse to plaintiff's interests and a breach of the applicable standard of care under the rules of professional conduct. 166 Idaho at 156–57, 456 P.3d at 522–23. The plaintiff made his expert witness disclosure and then the defendant moved for summary judgment arguing the plaintiff had not proffered expert testimony establishing that the defendant failed to meet the standard of care. *Id.* After the district court took the matter under advisement, the plaintiff submitted a "rebuttal expert disclosure" affidavit from his retained expert. *Id.* at 158, 456 P.3d at 524. The next day, the district court granted the defendant's motion for summary judgment. *Id.* The plaintiff moved for reconsideration and filed an additional declaration from his proposed expert. *Id.* The district court denied the motion, noting that the plaintiff did not provide sufficient expert testimony at the time of the summary judgment motion. *Id.*

On appeal to this Court, we affirmed the district court's denial of the plaintiff's motion for reconsideration. *Id.* at 161–62, 456 P.3d at 527–28. We held:

> As indicated by the district court, because the declarations provided by [the plaintiff's] experts were untimely for consideration at summary judgment per Idaho Rule [of] Civil Procedure 56(b)(2), *it was not required* to consider them in ruling on the motion for reconsideration. While this Court has explained that when considering a motion for reconsideration 'the trial court should take into account any new facts presented by the moving party that bear on the correctness of the order,' *Int'l Real Estate Solutions, Inc., v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014), this rule was not designed to allow parties to bypass timing rules or fail to conduct due diligence prior to a court's ruling. Rather, '[t]he purpose of a motion for reconsideration is to reexamine the correctness of an order.' *Id.*

*Id.* at 162, 456 P.3d at 528 (emphasis added). This Court went on further to hold that the district court did not abuse its discretion in declining to consider the plaintiff's additional expert declarations after summary judgment. *Id.* The plaintiff's opposition brief and supporting documents were supposed to be filed at least fourteen days before the hearing, yet they were filed fifty days after that date. *Id.* Therefore, the district court exercised its discretion reasonably. *Id.*

*Ciccarello* held that the district court is afforded discretion on whether to consider untimely declarations of fact accompanying a motion for reconsideration. *Ciccarello's* reasoning is applicable here, too. The trial court should have the discretion to determine whether it will consider additional evidence in support of a motion for reconsideration, if it is submitted late. Without such discretion, "parties [can] bypass timing rules or fail to conduct due diligence prior to a court's ruling" because the trial court *must* consider any additional evidence. *Id.* at 162, 456 P.3d at 528. When addressing a motion for reconsideration, *Ciccarello* still requires a trial court to consider evidence touching on the "correctness" of its original order. For example, if the trial court's ruling was based on a misunderstanding of the record, or if there was material evidence in the record that either side failed to present to the court on summary judgment, the court must consider such evidence on reconsideration if it would affect the correctness of its original decision. However, *Ciccarello* allows the court discretion to not consider evidence which reasonably should have been made a part of the record sooner, but was not. In short, while a motion for reconsideration is a safety valve to protect against legal and factual errors, it is not intended to be a mechanism that encourages tactical brinkmanship or a lack of diligence.

On Summerfield's motion for reconsideration, the district court was initially unaware of the broad discretion it had been granted under *Ciccarello*. The district court's order implies that

17

it was under the impression that it was *required* to consider the additional evidence. That is not what *Ciccarello* states. Once the district court realized its mistake, it then exercised its discretion to correct its error. We find the district court did not abuse its discretion by reversing its decision to grant Summerfield's motion for reconsideration and reinstating judgment for St. Luke's.

It is clear Dr. Madsen was retained at least six months before St. Luke's filed a motion for summary judgment, as Summerfield identified Dr. Madsen as his sole expert witness in response to St. Luke's interrogatory. The district court held that Dr. Madsen's initial expert witness disclosure, her first affidavit in response to summary judgment, and her second affidavit permitted by leave of the district court all failed to establish her knowledge of the applicable standard of care. Dr. Madsen's third affidavit, attached to Summerfield's motion for reconsideration, was filed long past the expert disclosure deadline and well after the filing of his briefs and affidavits in opposition to St. Luke's motion for summary judgment. Moreover, Dr. Madsen's third affidavit consisted of knowledge obtained about the applicable standard of care *after* the summary judgment motion had already been ruled on by the district court. Dr. Madsen's third affidavit detailed her phone call with Dr. Macha, a Boise general surgeon who performs laparoscopic cholecystectomies, to discuss the standard of care *10 days after* judgment had been entered against Summerfield. Dr. Madsen had not spoken with a general surgeon who performs laparoscopic cholecystectomies before this point. As the district court noted, "there is no good excuse for Summerfield's failure to develop and present the necessary foundation for Dr. Madsen's opinions until after a decision was rendered on summary judgment."

While we acknowledge that this may be a harsh outcome for Summerfield, the discretion rested with the district court to disregard the late affidavit, which consisted of evidence obtained after the summary judgment motion had been decided. The district court properly recognized the issue as one of discretion, acted within the outer boundaries of that discretion, applied the correct legal principles, and reached its decision by the exercise of reason. We cannot conclude the district court abused its discretion in light of the lack of diligence demonstrated by the record. Thus, we affirm the district court's order rescinding its order granting Summerfield's motion for reconsideration and reinstating judgment for St. Luke's. Consistent with our opinion above, this holding only applies to Summerfield's allegation that Dr. Ocmand breached the standard of care by failing to notice and retrieve the spilled gallstone.

**C. St. Luke's is not entitled to attorney fees or costs on appeal. Summerfield is entitled to his costs.**

St. Luke's requests attorney fees pursuant to Idaho Code section 12-121 or Idaho Rule of Civil Procedure 54(e)(2). Both award attorney fees to the prevailing party if a case or appeal was brought frivolously or without foundation. I.C. § 12-121; I.R.C.P. 54(e)(2). Because we have concluded that the district court erred in granting summary judgment to St. Luke's on two of the three grounds, Summerfield was the overall prevailing party and Summerfield's appeal was clearly not frivolous. Accordingly, we deny St. Luke's request for attorney fees.

St. Luke's also requests costs under Idaho Appellate Rule 40. Costs under Idaho Appellate Rule 40 are awarded as a matter of course to the prevailing party. Because St. Luke's is not the prevailing party, it is not entitled to costs on appeal; however, Summerfield, as the prevailing party, is entitled to costs on appeal.

## IV. CONCLUSION

The district court's summary judgment decision is affirmed in part and reversed in part. We affirm the district court's decision to grant St. Luke's motion for summary judgment on Summerfield's claim that Dr. Ocmand breached the standard of care for not noticing the spilled gallstone and not retrieving it because Dr. Madsen did not establish a sufficient foundation to testify as to the appropriate standard of care. We also affirm the district court's *sua sponte* decision to reverse itself and not consider Dr. Madsen's third affidavit and reinstate judgment for St. Luke's on this same ground. However, we reverse the district court's decision to grant St. Luke's motion for summary judgment as to Summerfield's claims that Dr. Ocmand breached the standard of care by failing to inform Summerfield of the spilled gallstone and by failing to note the spilled gallstone in Summerfield's medical chart because Dr. Madsen laid a sufficient foundation to testify as to these matters.

Summerfield is awarded his costs on appeal as the prevailing party. The case is remanded for further proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices BRODY, STEGNER and BURDICK **CONCUR.**

19